Argued and submitted February 14, 2020, reversed and remanded May 12, 2021

Dwight G. PURDY,
Conservator for
Isabelle Eve Norton, a minor,
*Plaintiff-Respondent,*

*v.*

DEERE AND COMPANY,
*Defendant-Appellant.*

Lane County Circuit Court
160800466

Dwight G. PURDY,
Conservator for
Isabelle Eve Norton, a minor,
*Plaintiff-Respondent,*

*v.*

Kirk Douglas NORTON,
*Defendant-Appellant.*

Lane County Circuit Court
161308863

A168139

492 P3d 99

Defendants Kirk Douglas Norton and Deere & Company appeal a judgment in this negligence and product liability personal injury action after a jury awarded plaintiff, as conservator for Isabelle Norton, a minor, damages for injuries Isabelle Norton sustained when defendant Norton, her father, accidentally backed over her with a rider lawn mower manufactured by Deere. The alleged defect was a design that allowed the operator to press a button on the dash to allow the mower blades to continue turning when the mower was operated in reverse. Defendant Deere assigns error to several jury instructions that Deere asserts likely affected the verdict. *Held*: The trial court erred in giving several of the jury instructions. The only test that a jury must apply in determining whether a product is unreasonably dangerous is the consumer-expectation test. The trial court therefore erred in giving an instruction that could have been understood to present a risk/utility theory for the jury to use in establishing unreasonable dangerousness. That error requires reversal, because it gave rise to some likelihood that the jury reached an erroneous result. The Court of Appeals also concluded that the jury instruction on warnings was incomplete, because it did not define what constitutes an "adequate warning," or instruct that warnings were required only if Deere knew or reasonably should have known of the risk associated with the use or misuse of the dash button.

Reversed and remanded.

Karsten H. Rasmussen, Judge.

Andrew J. Lee, argued the cause for appellant Deere and Company. Also on the briefs were Jeffrey S. Eden, Sara Kobak, and Schwabe, Williamson & Wyatt, P.C.; James M. Brogan, Pennsylvania, Nancy Shane Rappaport, Pennsylvania, and DLA Piper LLP (US).

Michael T. Stone filed the briefs for appellant Kirk Douglas Norton. Also on the opening brief was Brisbee & Stockton LLC.

Kathryn H. Clarke argued the cause for respondent. Also on the brief was Lisa T. Hunt.

Jonathan M. Hoffman and MB Law Group LLP filed the brief *amicus curiae* for Product Liability Advisory Council, Inc.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

ARMSTRONG, P. J.

Reversed and remanded.

**ARMSTRONG, P. J.**

Defendants Kirk Douglas Norton and Deere & Company appeal a judgment in this negligence and product liability personal injury action after a jury awarded plaintiff, as conservator for Isabelle Norton, a minor, damages for injuries that she sustained when defendant Norton, her father, accidentally backed over her with a rider lawn mower manufactured by Deere. Because we conclude that the trial court erred in instructing the jury and that the error likely affected the jury's verdict, we reverse the judgment and remand for a new trial.

## INTRODUCTION

The facts have been described in one Supreme Court opinion and two Court of Appeals opinions on plaintiff's appeal of a judgment for defendant Deere after the first trial of plaintiff's claim. *Purdy v. Deere & Co.*, 252 Or App 635, 287 P3d 1281 (2012) (*Purdy I*), *rev'd*, 355 Or 204, 324 P3d 455 (2014) (*Purdy II*), *on remand*, 281 Or App 407, 386 P3d 2 (2016) (*Purdy III*). To summarize, plaintiff's product liability claim arises out of injuries that the child sustained, allegedly as a result of a design feature on a Deere rider mower that allowed the operator of the mower to press a Reverse Implement Option (RIO) button on the dashboard that would override the mower's automatic shut-down when the mower is moving in reverse. Norton was mowing his lawn and accidentally backed over and seriously injured the child while driving the mower in reverse after pressing the RIO button to prevent the mower from shutting down. Plaintiff brought this product liability claim under ORS 30.920 against Deere on the child's behalf. Plaintiff's complaint alleged that the RIO button caused a "visibility defect" that prevented Norton from seeing and avoiding danger to his daughter while driving in reverse,[1] and that Deere had failed to provide adequate instructions and warnings concerning the dangers of using the RIO button.

After the first trial in this case, which resulted in a defense verdict, we ultimately reversed the judgment based

---

[1] In *Purdy III*, we described the "visibility defect" as asserting that a user of the mower "would not realize that they could not see behind them without actually turning fully around." 281 Or App at 420.

on jury instruction errors and remanded the case for a new trial. *Purdy III*. On remand, plaintiff added a negligence claim against Norton, asserting that Norton had failed to keep an adequate lookout and had failed to heed warnings about safe use of the mower. In the second trial, the jury found both Norton and Deere liable and awarded plaintiff damages. The assignments of error on this appeal by Deere pertain to jury instructions relating to product liability and to the apportionment of fault and to the trial court's rejection of Deere's request to reduce the jury's award of noneconomic damages under ORS 31.710.

## DESIGN DEFECT PRODUCT LIABILITY LAW OVERVIEW

We begin with some legal background on the product liability claim. Under ORS 30.920,[2] the manufacturer of a product is liable for injuries caused to the product's user or to a third party if the plaintiff shows that the product is both defective and unreasonably dangerous. *McCathern v. Toyota Motor Corp.*, 332 Or 59, 77, 23 P3d 320 (2001). The

---

[2] ORS 30.920 provides:

"(1) One who sells or leases any product in a defective condition unreasonably dangerous to the user or consumer or to the property of the user or consumer is subject to liability for physical harm or damage to property caused by that condition, if:

"(a) The seller or lessor is engaged in the business of selling or leasing such a product; and

"(b) The product is expected to and does reach the user or consumer without substantial change in the condition in which it is sold or leased.

"(2) The rule stated in subsection (1) of this section shall apply, even though:

"(a) The seller or lessor has exercised all possible care in the preparation and sale or lease of the product; and

"(b) The user, consumer or injured party has not purchased or leased the product from or entered into any contractual relations with the seller or lessor.

"(3) It is the intent of the Legislative Assembly that the rule stated in subsections (1) and (2) of this section shall be construed in accordance with the *Restatement (Second) of Torts* sec. 402A, Comments a to m (1965). All references in these comments to sale, sell, selling or seller shall be construed to include lease, leases, leasing and lessor.

"(4) Nothing in this section shall be construed to limit the rights and liabilities of sellers and lessors under principles of common law negligence or under ORS chapter 72."

court in *McCathern* set out the statutory elements of a product liability claim:

> "[T]o prove that a product was in a 'defective condition unreasonably dangerous to the user or consumer,' ORS 30.920(1), the plaintiff must prove that: (1) 'at the time it leaves the seller's hands, [the product is] in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him,' *see Restatement* [*(Second) of Torts*] § 402A[ c]omment g [(1965)] (so defining 'defective'); and (2) '[the product is] dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics,' *see Restatement* § 402A[ c]omment i (so defining 'unreasonably dangerous'). Whether a product is dangerous to an extent beyond that which would be contemplated by the ordinary consumer is a factual question to be determined by the jury. *Heaton*[ *v. Ford Motor Co.*, 248 Or 467, 472-73, 435 P2d 806 (1967)]. It is the trial court's role, however, to ensure that the evidence is sufficient for the jury to make an informed decision about what ordinary consumers expect. *Id.*"

332 Or at 77-78 (second and sixth brackets in original).

In *McCathern*, the court described the evolution of Oregon's product liability law with respect to design defects and proof that a product is unreasonably dangerous and defective. To summarize, before the enactment of ORS 30.920 in 1979, the court, in *Heaton*, 248 Or at 470-74, had adopted the "consumer expectation test" set out in *Restatement* section 402A and its comments, as the standard for liability in design defect product liability cases.[3]

---

[3] *Restatement* section 402A provides:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a) the seller is engaged in the business of selling such a product, and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although

"(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

The court accepted the *Restatement*'s formulation that a product "is dangerously defective when it is in a condition unreasonably dangerous to the user." *Heaton*, 248 Or at 471. And again referring to the *Restatement*, the court said that a product is "unreasonably dangerous to the user" when it is "dangerous to an extent beyond that which would be contemplated by the ordinary consumer." *Id.*; *Restatement* § 402A comment i. In deciding what the reasonable consumer expects, the court said in *Heaton*, the jury

> "is not permitted to decide how strong products should be, nor even what consumers should expect, for this would in effect be the same thing. The jury is supposed to determine the basically factual question of what reasonable consumers do expect from the product."

248 Or at 474.

The court subsequently changed focus relating to the determination of "unreasonable danger." In *Phillips v. Kimwood Machine Co.*, 269 Or 485, 525 P2d 1033 (1974), the court deviated from *Heaton*'s consumer-focused test and announced what became known as the "reasonable manufacturer test." Unlike the "consumer expectation test," which asks juries to focus on the actual expectations of the ordinary consumer about product safety, the "reasonable manufacturer test" focused on the manufacturer's motives for placing the product on the market and on the reasonableness, or lack thereof, of that conduct. Would a reasonably prudent manufacturer have so designed, marketed, and sold the product had it known of the risk involved that injured the plaintiff? *Phillips*, 269 Or at 492. The court reasoned that the two tests were actually equivalent: "[A] manufacturer who would be negligent in marketing a given product, considering its risks, would necessarily be marketing a product which fell below the reasonable expectations of consumers who purchase it." *Id.* at 493

In a companion case to *Phillips*, *Roach v. Kononen/ Ford Motor Co.*, 269 Or 457, 525 P2d 125 (1974), the court had described seven factors that bear on *a court's* inquiry as to the sufficiency of the evidence of liability under the reasonable-manufacturer test, which the court said required a balancing of the utility of the product's risk against the

magnitude of the risk.[4] In *Phillips*, the court noted those factors and emphasized that they were *for the court's use* in assessing whether the record was sufficient to allow the jury to determine whether there was liability under the reasonable-manufacturer test, but were not bases for jury instructions.[5]

In 1979, the legislature adopted ORS 30.900[6] and ORS 30.920, codifying Oregon's product liability law and tracking the wording of the section 402A. In *McCathern*, 332 Or at 75, the court explained that, in *Ewen v. McLean Trucking Co.*, 300 Or 24, 32, 706 P2d 929 (1985), the court had construed ORS 30.920(3), requiring that subsections (1)

---

[4] The court said in *Roach*, 269 Or at 464:

"Factors which should be considered by the court in balancing the utility of the risk against the magnitude of the risk are:

"(1) The usefulness and desirability of the product—its utility to the user and to the public as a whole.

"(2) The safety aspects of the product—the likelihood that it will cause injury, and the probable seriousness of the injury.

"(3) The availability of a substitute product which would meet the same need and not be as unsafe.

"(4) The manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility.

"(5) The user's ability to avoid danger by the exercise of care in the use of the product.

"(6) The user's anticipated awareness of the dangers inherent in the product and their avoidability, because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions.

"(7) The feasibility, on the part of the manufacturer, of spreading the loss by setting the price of the product or carrying liability insurance."

[5] The court in *Phillips* said that "the factors set forth \*\*\* in [*Roach*] are not the bases for instructions to the jury but are for the use of the court in determining whether a case has been made out which is submissible to the jury." 269 Or at 501.

[6] ORS 30.900 provides:

"As used in ORS 30.900 to 30.920, 'product liability civil action' means a civil action brought against a manufacturer, distributor, seller or lessor of a product for damages for personal injury, death or property damage arising out of:

"(1) Any design, inspection, testing, manufacturing or other defect in a product;

"(2) Any failure to warn regarding a product; or

"(3) Any failure to properly instruct in the use of a product."

and (2) be construed "in accordance with the *Restatement (Second) of Torts* [section] 402A, Comments a to m (1965)," as an enactment of the "consumer expectation test." The court held in *Ewen* that, under ORS 30.920, a jury in a design-defect case "should receive some instruction phrased so as to focus on what extent of risk an ordinary consumer would contemplate when purchasing a product with the knowledge of its characteristics common to the relevant community." 300 Or at 32.

In *McCathern*, the question before the court was the sufficiency of the evidence to satisfy the consumer-expectation test. In our opinion in that case, *McCathern*, 160 Or App 201, 985 P2d 804 (1999), *aff'd*, 332 Or 59, 23 P3d 320 (2001), we attempted to construct a template for a plaintiff's proof of consumer expectations. We analyzed the Supreme Court's case law and the law of other jurisdictions relating to product liability and concluded that a product liability plaintiff may satisfy the consumer-expectation test through either of two approaches: a "representational" approach, which we said was derived from the "reasonable manufacturer test" and which concerned solely the manufacturer's representations and consumers' consequent expectations, or a "consumer risk-utility" approach, also "informed" by the "reasonable manufacturer test," to which "a practicable safer alternative design is integral." *Id.* at 220. The "consumer risk-utility" approach, we said,

> "proceeds from the premise that ordinary consumers reasonably expect products to be designed in the safest feasible and practicable manner. Thus, proof that a product could have feasibly and practicably been designed more safely is proof that the product failed to meet reasonable consumer expectations."

*Id.* at 210. After considering the features of each approach, we determined that "a plaintiff in a defective design product liability case can, with sufficient proof, proceed under either a 'representational' theory, a 'consumer risk-utility' theory, or both." *Id.* at 218. We concluded, further, that a plaintiff who proceeded under a "consumer risk-utility" approach "must present evidence from which the jury could find the availability of a safer practicable alternative design." *Id.* at 221. We analyzed the record in *McCathern* and concluded

that the plaintiff had presented evidence that was sufficient under either a "representational" or "consumer risk-utility" approach and that the trial court therefore had not erred in submitting the product liability claim to the jury.

The defendant sought review in the Supreme Court, contending that our hybrid formulation had erroneously converted categories of evidence relevant to consumer expectations into separate and new theories of liability that conflicted with ORS 30.920 and with the Supreme Court's case law. The Supreme Court allowed review and agreed with the defendant. *McCathern*, 332 Or at 76. The court affirmed our disposition but on a different rationale. At the outset, the court determined "the controlling standard for design defect liability in Oregon and the proof necessary to satisfy [the consumer-expectations] standard." *Id.* at 72. The court discussed its past jurisprudence and held that the legislature's enactment of ORS 30.920 demonstrated a clear intention to adopt the "consumer-expectations test," and to abrogate *Phillips*'s reasonable-manufacturer test, as the test for whether a product is defective and unreasonably dangerous. *Id.* at 76.

The court in *McCathern* then addressed the proof required in a design-defect case to establish that a product fails to meet ordinary consumer expectations as to safety. The court rejected our view that consumer expectations may be established under either a representational or consumer risk-utility approach and also rejected our conclusion that evidence of "consumer risk-utility" was always required in a design defect case. The court reiterated that ORS 30.920 establishes the consumer-expectations test as the only available theory of liability:

> "[W]hether or not evidence related to risk-utility balancing is necessary to satisfy a plaintiff's burden of proof, a plaintiff's theory of liability under ORS 30.920 remains the same: That the product was dangerously defective and unreasonably dangerous because it failed to perform as the ordinary consumer expects. In other words, *** 'consumer risk-utility' is not a separate 'theory of liability' under the statutorily mandated consumer expectations test."

332 Or at 79.

The court explained that, although consumer risk/utility cannot be presented as a separate theory of liability, evidence of a product's risks verses its utility could be relevant to a determination of consumer expectations. The court noted *Heaton*'s observation that, in some design-defect cases, consumer expectations about how a particular product should perform may be beyond the jury's common experience. *Id.* at 78 (citing *Heaton*, 248 Or at 47-74). In those cases, the court explained, additional evidence about the ordinary consumer's expectations is necessary. *Id.* That additional evidence, the court said, "may consist of evidence that the magnitude of the product's risk outweighs its utility, which often is demonstrated by proving that a safer design alternative was both practicable and feasible." *Id.*

But, the court emphasized, a consumer risk-utility approach—which, as we described it in *McCathern*, 160 Or App at 210, would include inquiry beyond what the consumer actually expects—is not itself a separate theory of liability. *McCathern*, 332 Or at 79. The only test for determining under ORS 30.920 whether a product is unreasonably dangerous is the consumer-expectation test—whether "the product was dangerously defective and unreasonably dangerous because it failed to perform as the ordinary consumer expects." *Id.* at 79.

As noted, the first trial in this case resulted in a defense verdict. In that trial, the court had instructed the jury:

> "When determining whether a product is dangerous to an extent beyond that which would be contemplated by the ordinary consumer, you may consider evidence that the product's risks outweigh its utility.

> "When determining whether a product's risks outweigh its utility, you may consider evidence whether a safer design alternative was both practical and feasible.

> "In considering whether an alternative design is both practical and safer than the design at issue, you may consider whether the alternative design would have increased the overall safety and utility of the product, not just the safety of the product as it regards the type of injury in this case."

On appeal, plaintiff challenged the third paragraph of that instruction, contending that it was not a proper subject for

a jury instruction. We agreed with plaintiff that, despite the court's subsequent disavowal of *Phillips*'s "reasonable manufacturer test," *Phillips*'s holding that a jury should not be instructed on the factors listed by the court in *Roach* remains good law:

> "The Supreme Court has stated—twice—that the particular factors that govern a trial court's assessment of whether a plaintiff's evidence that there is an alternative product design that is safer, practicable, and feasible, do not supply the bases for jury instructions, and that the jury is to be instructed only under the applicable standard for assessing whether a product is in a dangerously defective condition. We recognize that the Supreme Court made those statements at a time when the 'reasonable manufacture' test provided the legal standard for evaluating whether a product was dangerously defective. However, the Supreme Court has not retreated from its clearly stated position that the factors that govern risk-utility analysis should not be used to instruct the jury, and we fail to see how the switch from the 'reasonable manufacture' test to the 'consumer expectations' test suggests that a different approach is warranted, absent an express change in course by the Supreme Court."

*Purdy III*, 281 Or App at 428-29. We held that the third paragraph of the court's instruction on risk/utility should not have been given. *Id.* at 428.[7]

### DISPOSITIVE ASSIGNMENT OF ERROR

In plaintiff's second trial, plaintiff asserted that a safer design alternative for the mower was both practicable and feasible. The court instructed the jury regarding its obligation to determine whether the mower was unreasonably dangerous. The first paragraph of the instruction defined what constitutes an "unreasonably dangerous" product:

> "A product is unreasonably dangerous when it is dangerous to an extent beyond that which would be contemplated

---

[7] We also held in *Purdy III* that the instruction was not a correct statement of the law because it mistakenly instructed the jury to consider whether alternative designs affirmatively increased overall safety and utility, when "the jury's task was different: to assess the alternative design's effect on overall safety, and to then take that effect into account in assessing whether the design was one that was practicable." 281 Or at 429-30.

by the ordinary consumer who purchases the product with the ordinary knowledge common to the community as to its characteristics."

The parties do not dispute the correctness of that instruction. The dispute on Deere's first assignment of error concerns the second paragraph of the instruction, which told the jury how to determine whether the mower was unreasonably dangerous:

"When assessing whether the Model L120D was unreasonably dangerous, you are to determine from the evidence and your common knowledge what ordinary consumers actually expect from a product such as a Model L120D. *You may also consider whether the Model L120D's risks outweigh its utility. When determining whether risks outweigh utility, you may consider evidence that a safer design alternative was both practicable and feasible.*"[8]

---

[8] Plaintiff had proposed the following instructions:

"RISK V. UTILITY EVIDENCE When determining whether a product is dangerous to an extent beyond that which would be contemplated by the ordinary consumer, you may consider evidence that the product's risks outweigh its utility. *McCathern v. Toyota Motor Corp.*, 332 OR 59, 77-79, 23 P3d 320 (2001) (recognizing that the consumer expectations test of ORS 30.920 may be satisfied by evidence that a product's risk outweighs its utility).

"SAFER, PRACTICABLE DESIGN ALTERNATIVES When determining whether a product's risks outweigh its utility, you may consider evidence that a safer design alternative was both practicable and feasible. *McCathern v. Toyota Motor Corp.*, 332 OR 59, 77-79, 23 P3d 320 (2001) (recognizing that evidence that a safer design alternative was both practicable and feasible may be used to show that a product's risks outweigh its utility)."

(Uppercase in original.) Deere asserted that the proposed instructions were an unnecessary comment on the evidence and risked allowing the jury to supplant the consumer-expectation test with a risk/utility test. Defendant further argued that, under *Purdy III*, the jury is not to be instructed on risk/utility factors and that alternative design evidence is merely a rephrasing of the risk/utility elements that are factors just for the court to consider. Deere contended that the only risk/utility instruction that would be appropriate would be one directing the jury to consider risk/utility evidence in determining the consumer's expectation. Deere proposed an instruction to that effect:

"RISK/UTILITY EVIDENCE

"Plaintiff in this case contends there is a safer design alternative that was both practicable and feasible. Such evidence is relevant, if at all, only to the extent that it establishes whether the Deere tractor was dangerous to an extent beyond that which was contemplated by the ordinary consumer who purchased the product with the ordinary knowledge common to the community as to its characteristics."

(Uppercase in original.)

(Emphasis added.) Deere agrees that the first sentence of the instruction is a correct statement of the consumer-expectations test. But in its first assignment of error, Deere contends that the remainder of the paragraph contains multiple legal errors. The second sentence of the instruction, Deere contends, which told the jury that it "may also consider" whether the mower's risks outweighed its utility, could have been understood to state an alternative or supplemental theory on which the jury could determine whether the mower was unreasonably dangerous, in violation of *McCathern*. And Deere contends that the third sentence, which told the jury that, in making the risk/utility determination, it could consider evidence of safer design alternatives, increased that likelihood. Deere contends that the second and third sentences together could have caused the jury to understand that, as an alternative or supplement to the consumer-expectations test, it could determine whether the mower was unreasonably dangerous by concluding that the mower's risks outweighed its utility in light of evidence of alternative safer designs. That aspect of the instruction, Deere contends, is inconsistent with the Supreme Court's requirement in *McCathern* that a jury in a design-defect product liability claim is to be presented with only the consumer-expectations theory of liability. Finally, Deere contends that the third sentence of the instruction was an inappropriate comment on the evidence that also was contrary to our conclusion in *Purdy III* that the jury should not be instructed on the factors governing risk/utility analysis.

Plaintiff responds that the court's instructions were correct. Plaintiff notes that the court twice correctly stated that ordinary consumer expectations govern a determination whether the product was unreasonably dangerous and that we must assume that the jury followed those instructions. *Wallach v. Allstate*, 344 Or 314, 326, 180 P3d 19 (2008) (we presume that a jury follows a court's instructions). Additionally, plaintiff asserts that the instruction's statement that the jury "may also consider" whether risks outweigh utility cannot be understood as presenting an alternative theory for liability, but merely as a correct statement that, in determining whether the mower met consumer

expectations, the jury could consider evidence of alternative designs and risk/utility that had been properly admitted at trial. *See McCathern*, 332 Or at 78 (stating that evidence to assist the jury in determining consumer expectations "may consist of evidence that the magnitude of the product's risk outweighs its utility, which often is demonstrated by proving that a safer design alternative was both practicable and feasible").

We review a trial court's rulings regarding jury instructions for legal error. *Wallach*, 344 Or at 318-22 (applying standard). A legal error arises from an instruction that presents an inaccurate or incomplete statement of the law or that misleads or confuses the jury. *Id.* at 325; *Rogers v. Meridian Park Hospital*, 307 Or 612, 616, 772 P2d 929 (1989). We agree with Deere that, for several reasons, the trial court's instruction was erroneous.

The first sentence of the instruction's second paragraph correctly described the consumer-expectations theory of liability, telling the jury to "determine from the evidence and your common knowledge what ordinary consumers actually expect" from the mower. But, as Deere argues, the second sentence drew the jury's attention away from that test. Contrary to plaintiff's contention, the second sentence did not say that the jury could consider *evidence* of whether the product's risk outweighed its utility; nor did it connect evidence of risk/utility to the jury's determination of the consumer's expectations. The jury was told that it could consider whether the mower's risk outweighed its utility; it was not told that it should consider risk/utility and alternative design evidence in determining what a consumer expects. As written, the second sentence of the instruction could have been understood to present a risk/utility theory for establishing unreasonable dangerousness that was an alternative or conjunctive to the consumer-expectations test. *See McCathern*, 332 Or at 79 (holding that jury is to be instructed on only the consumer-expectations theory of liability); *Burns v. General Motors*, 133 Or App 555, 561, 891 P2d 1354 (1995) (explaining that, by adopting ORS 30.920, the legislature designated the consumer-expectations test as the sole test for a dangerously defective product).

The third sentence of the instruction's second para-
graph was also problematic. It told the jury that, in "deter-
mining" whether the mower's risk outweighed its utility,
the jury could consider "evidence that a safer design alter-
native was both practicable and feasible." That sentence—
particularly its reference to the jury determining risk/
utility—bolstered the implication of the preceding sentence
that risk balancing was an alternative approach for deter-
mining whether the product was unreasonably dangerous.
Additionally, as it was phrased, the third sentence was an
inappropriate comment on the evidence, because it high-
lighted evidence that a safer design alternative was practi-
cable and feasible. ORCP 59 F ("The judge shall not instruct
with respect to matters of fact, nor comment thereon.");
*State v. Brown*, 310 Or 347, 373, 800 P2d 259 (1990) (holding
that a court impermissibly comments on the evidence when
it gives a jury instruction that tells the jury how specific
evidence relates to a particular legal issue).

Finally, the reference in the instruction's third sen-
tence to consideration of evidence of safer design alterna-
tives is a paraphrase of two factors listed in *Roach* that the
Supreme Court, in *Phillips*, and this court, in *Purdy III*, have
said should be considered *by the court* in deciding whether to
submit a claim to the jury but that should not be the subject
of an instruction. *Purdy III*, 281 Or App at 427 n 9 (quoting
*Phillips*, 269 Or at 501, and listing *Roach* factors, among
them, "[t]he availability of a substitute product which would
meet the same need and not be as unsafe"; and "[t]he man-
ufacturer's ability to eliminate the unsafe character of the
product without impairing its usefulness or making it too
expensive to maintain its utility").

Not all instructional error requires reversal. The
giving of an erroneous instruction is reversible error only if,
considered in the light of the record as a whole, it substan-
tially affects a right of the parties by permitting the jury to
reach an erroneous result. *Purdy II*, 355 Or at 227; *Wallach*,
344 Or at 329 (stating that, when a trial court incorrectly
instructs the jury on an element of a claim or defense and
when that incorrect instruction permits the jury to reach a
legally erroneous result, a party has established that the
instructional error substantially affected its rights within

the meaning of ORS 19.415(2)). The instructional error here meets that standard.[9] The instruction provided the only direction to the jury on how to determine whether the mower was unreasonably dangerous. It could have led the jury to make its finding that the mower was unreasonably dangerous on the incorrect basis that, in light of alternative safer designs, the mower's risks outweighed its utility. The likelihood of the jury's misunderstanding was amplified by plaintiff's counsel's closing argument to the jury that, "if you find those risks exceed utility, then it is unreasonably dangerous." Although evidence of risk balancing may be relevant to the jury's determination of what the consumer expects from a product, the risk/utility standard is not the equivalent of the consumer-expectations test, and liability may not be determined based solely on the jury's weighing of the product's risk and utility. The Supreme Court explicitly rejected our analysis in *McCathern*, 160 Or App at 210, that held otherwise. *McCathern*, 332 Or at 79 (holding that, contrary to the Court of Appeals' opinion, "consumer risk-utility" is not a separate "theory of liability" under the statutorily mandated "consumer expectation" standard). Considering the record as a whole and in the light of the parties' theories at trial, we conclude that the instructional errors gave rise to some likelihood that the jury reached an erroneous result.  *See Purdy II*, 335 Or at 231-32 ("[I]f a trial court incorrectly instructs the jury on an element of a claim or defense, and—when the instructions are considered as a whole in light of the evidence and the parties' theories of the case at trial—there is some likelihood that the jury reached a legally erroneous result, a party has established that the

---

[9] The trial court thought that it might have erred in giving the risk/utility instruction but decided that the error had no likelihood of affecting the verdict:

"The Court may have erred by giving its risk-utility and alternative design instructions, but there is almost no likelihood that this influenced the jury's verdict in any meaningful way. The perhaps-erroneous instruction told the jury they could consider evidence that the risks imposed by the Model L120D outweighed the mower's utility and evidence of alternative designs. The jury would have heard and evaluated risk-utility evidence and evidence of alternative designs with or without the Court's erroneous instructions. The instructions did not tell the jury to give any undue weight to Plaintiff's evidence. In fact, the instructions did not require the jury to consider the evidence at all ('you may'). For these reasons, there is almost no likelihood the instructions influenced the jury's verdict against Deere."

instructional error substantially affected its rights within the meaning of ORS 19.415(2).".). Accordingly, the jury's verdict must be reversed and the case remanded for a new trial.

ISSUES LIKELY TO ARISE ON REMAND

Because they are likely to arise on remand, we address issues raised in Deere's second, third, fourth, and fifth assignments, which present additional challenges to the court's instructions.

Plaintiff's complaint alleged that Deere's warnings and instructions regarding the use and dangers of using the RIO button were inadequate and rendered the mower unreasonably dangerous. Regarding the duty to warn, *Restatement* section 402A comment h provides, in part:

"A product is not in a defective condition when it is safe for normal handling ***. If the injury results from abnormal handling ***, the seller is not liable. Where, however, [the seller] has reason to anticipate that danger may result from a particular use, *** [the seller] may be required to give adequate warning of the danger (see Comment j), and a product sold without such warning is in a defective condition."

Comment j, in turn, requires a seller to give a warning if the seller "has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge" of the danger. *Restatement* § 402A comment j.

Based on comment h, Deere sought an instruction stating that a manufacturer may have a duty to warn if the manufacturer "has reason to anticipate that danger may result from a particular use," and, further, that,

"[i]n order to prevent a product from being unreasonably dangerous, the manufacturer, distributor, or seller may be required to give a warning or instruction regarding the use of the product. However, a manufacturer, distributor, or seller is not required to give warning against a danger unless the manufacturer, distributor, or seller has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge, of the presence of the danger."

Plaintiff objected to the requested instructions, contending that their emphasis on the seller's knowledge of the danger was inconsistent with the seller's strict liability under ORS 30.920(2), even if the seller "exercised all possible care in the preparation and sale or lease of the product."

The court declined to include in the instructions Deere's requested reference to the seller's knowledge and gave the following instructions with regard to warnings, based on the Uniform Civil Jury Instruction 48.07:

> "To prevent the Model L120D from being unreasonably dangerous, Deere may have been required to give a warning or instruction regarding the use of the Model L120D. If you determine that the Model L120D would be unreasonably dangerous in the absence of an adequate warning or instruction, and if you determine that an adequate warning or instruction did not accompany the Model L120D, then the Model L120D was unreasonably dangerous.

> "Where an adequate warning or instruction is given, Deere may reasonably assume that it will be read and heeded, and a product bearing such a warning or instruction, which is safe for use if it is followed, is not in a defective condition, nor is it unreasonably dangerous."

On appeal, Deere contends that the trial court's instructions were incomplete, because, although they explained that Deere *may* have been required to give a warning, they did not explain *under what circumstance* Deere was required to give a warning concerning dangers of using the RIO button and that a warning was required only if, as stated in *Restatement* section 402A comments h and j, Deere knew or reasonably should have known of the risk associated with the use or misuse of the RIO button.

Plaintiff responds that comments h and j, which incorporate a standard of foreseeability in design-defect product liability claims based on a failure to give warnings, are simply incompatible with the standard set forth in ORS 30.920(2)(a), stating that liability is imposed even if the seller "exercised all possible care in the preparation and sale or lease of the product"—in other words, if the seller took reasonable care to avoid foreseeable harm. Plaintiff notes that in *Phillips*, the Supreme Court disavowed its former holding

in *Anderson v. Klix Chemical*, 256 Or 199, 203, 472 P2d 806 (1970), based on the *Restatement*, that a product liability claim based on a failure to warn "does revert to a negligence basis for liability."[10] The court explained its reasoning:

> "In a strict liability case we are talking about the condition (dangerousness) of an article which is sold without any warning, while in negligence we are talking about the reasonableness of the manufacturer's actions in selling the article without a warning. The article can have a degree of dangerousness because of a lack of warning which the law of strict liability will not tolerate *even though the actions of the seller were entirely reasonable in selling the article without a warning considering what he knew or should have known at the time he sold it.*"

*Phillips*, 269 Or at 498 (emphasis added). In plaintiff's view, in disavowing *Anderson*, the court in *Phillips* made clear that, in the product liability context, where the question is whether the product is unreasonably dangerous, the reasonableness of the seller's conduct in selling the article without a warning has no relevance. Thus, plaintiff contends, comments h and j of the *Restatement* section 402A on which Deere relies for imposing a standard of foreseeability with regard to the need for warnings are inconsistent with the provisions of *Restatement* section 402A and ORS 30.920(2)(a) stating that liability is imposed even if the seller "exercised all possible care in the preparation and sale or lease of the product," and should not be the basis for an instruction.

Deere replies that, after *Phillips*, the Oregon legislature adopted ORS 30.920 and also adopted *Restatement* section 402A comments h and j that incorporate a foreseeability standard in the context of a failure-to-warn claim. Thus, Deere contends, despite *Phillips* and ORS 30.920

---

[10] The court in *Anderson* explained:

"This aspect of 'strict liability,' failure to warn of the dangers of an otherwise nondefective product, does revert to a negligence basis for liability. The basic questions are whether it was reasonably foreseeable to the manufacturer that the product would be unreasonably dangerous if distributed without a warning on the label and, if so, whether the manufacturer supplied the warning that a reasonably prudent manufacturer would have supplied."

265 Or at 203.

(2)(a), the legislature must have intended to incorporate the foreseeability component of comments h and j into a failure-to-warn product liability claim.[11]

We are persuaded by Deere's argument. As Deere correctly notes, ORS 30.920(3) requires that ORS 30.920(1) and (2) be "construed in accordance with the *Restatement (Second) of Torts* sec. 402A, Comments a to m (1965)." Textually, ORS 30.920(1) and (2) must be construed consistently with comments h and j, as the Supreme Court has explicitly recognized. *Griffith v. Blatt*, 334 Or 456, 467, 51 P3d 1256 (2002) (noting the applicability of comments h and j to a product liability claim based on failure to warn). Thus, *Phillips* has been overruled by *Griffith* on this issue. We reached the same conclusion in *McKenzie v. A. W. Chesterson Co.*, 277 Or App 728, 744, 373 P3d 150, *rev den*, 360 Or 400 (2016), where we held that comments h and j apply to product liability claims based on a failure to warn:

> "Under Oregon law, comments h and j to section 402A of the *Restatement* apply to a product liability claim based on the failure to warn. *Griffith*, 334 Or at 467 (stating that, pursuant to ORS 30.920(3), the court was obliged to construe ORS 30.920(1) in accordance with comments h and j). A seller subject to Oregon law 'may be required to give an adequate warning of the product's danger to a consumer when the seller has knowledge or should have knowledge of the danger.' *Id*. at 467-68. Oregon has long recognized that sellers of products have a duty to provide adequate warnings about nonobvious risks of injury associated with the use of their products when they know, or reasonably should know, of those risks of injury. *See, e.g.*, *Benjamin v. Wal-Mart Stores, Inc.*, 185 Or App 444, 454-55, 61 P3d 257 (2002), *rev den*, 335 Or 479 (2003) (collecting cases)."

Thus, as the Supreme Court and we have construed ORS 30.920(3), in a product liability defective design claim based

---

[11] Deere further asserts that ORS 30.920(2)(a) describes a standard of care, which is distinct from and not in conflict with a requirement of foreseeability as stated in the *Restatement* comments. *See Sloan v. Providence Health System-Oregon*, 364 Or 635, 643, 437 P3d 1097 (2019) (explaining that, "in ordinary negligence claims, foreseeability plays a role in determining whether a defendant's conduct is negligent (in other words, in setting a defendant's standard of care) and whether a defendant should be liable for particular consequences of their negligent conduct (in other words, establishing the scope of a defendant's liability)").

on a failure to warn, comments h and j of section 402A apply to impose a standard that resembles a negligence foreseeability standard.

Deere is correct that the instructions as given relating to warnings were not complete. They told the jury that Deere may have been required to give a warning regarding use of the RIO button if the product was unreasonably dangerous without a warning, but did not tell the jury that Deere's obligation to warn arose only if Deere knew or reasonably should have known of the risks of using the RIO button. Deere's requested instruction was proper and necessary to complete the jury's understanding for when a manufacturer is required to give a warning.

Deere also challenges the trial court's refusal to define for the jury an "adequate" warning. As previously noted, the jury instructions relating to warnings referred to "adequate" warnings. The adequacy of a warning ordinarily is a jury question. *Reiger v. Toby Enterprises*, 45 Or App 679, 684, 609 P2d 402, *rev den*, 289 Or 337 (1980). In *Benjamin*, 185 Or App at 454-55, a product liability case based on a failure to warn, we had before us the question whether the plaintiff had presented sufficient evidence that the defendant manufacturer's warnings were "inadequate." In determining in *Benjamin* whether the evidence was sufficient, we referred to the Supreme Court's opinions in *Schmeiser v. Trus Joist*, 273 Or 120, 133, 540 P2d 998 (1975), holding that a warning should give "fair and adequate notice of the possible consequences of use or even misuse," and *Anderson*, 256 Or at 207, holding that a warning is adequate when it is "in such a form that it could reasonably be expected to catch the attention of the reasonably prudent [person] in the circumstances of its use" and the content of the warning is "of such a nature as to be comprehensible to the average user and to convey a fair indication of the nature and extent of the danger to the mind of a reasonably prudent person." Deere sought an instruction defining "adequate" in the same way the Supreme Court had defined it in *Schmeiser* and *Anderson*:

"When required, a warning or instruction is adequate if:

"(1)   It is in such a form that, in the circumstances of the product's use, it could reasonably be expected to catch the attention of a reasonably prudent person; and

"(2)   The content of the warning or instruction is of such a nature as to be comprehensible to the average user and to convey a fair indication of the nature and extent of the danger from use and improper use to a reasonably prudent person."

The trial court declined to give the requested instruction, reasoning that it merely substituted legal terminology for the common understanding that an adequate warning is one that a reasonable person would notice and understand.

On appeal, Deere contends that the Supreme Court, in *Schmeiser* and *Anderson*, and this court, in *Benjamin*, have established an objective standard for whether a warning is "adequate" in a failure-to-warn product liability claim that requires the jury to consider whether the warning that was given conveyed to a reasonably prudent person a fair indication of the nature and extent of the danger from use and improper use of the product. Plaintiff responds that the trial court was correct that there was no need to instruct the jury on the meaning of the commonly understood term "adequate." *See State v. McDonnell*, 313 Or 478, 497, 837 P2d 941 (1992) (stating that words of common usage need not be defined for the jury).

We would certainly agree with the trial court that not every judicial pronouncement on a common term requires or should have a jury instruction. *See Amfac Foods v. Int'l Systems*, 294 Or 94, 99 n 3, 654 P2d 1092 (1982) (warning that, because many appellate opinions are written with no view that they will be turned into instructions, care must be exercised in using the language of those opinions for instructions to juries). But, here, the Supreme Court has added an objective component to the meaning of "adequate" in the context of a failure-to-warn claim that is not necessarily encompassed within the common meaning of the term. *See Webster's Third New Int'l Dictionary* 25 (unabridged ed 2002) (defining "adequate" as "equal to, proportionate to, or fully sufficient for a specified or implied requirement, often : narrowly or barely sufficient : no more than satisfactory").

Without the instruction, the jury did not necessarily understand that the adequacy of a warning should be assessed from the standpoint of the reasonably prudent person, rather than from the perspective of the product's user, and that it should take into account the warning's form as well as its content, *Anderson*, 256 Or at 207, and whether it warned of the consequences of potential use *or misuse* of the product. *Schmeiser*, 273 Or at 133. We conclude that the court erred in rejecting Deere's requested instructions defining an adequate warning.

As noted, the jury awarded plaintiff damages against Deere on plaintiff's product liability claim and against Norton on plaintiff's common-law negligence claim. Under ORS 31.610, a tortfeasor is responsible only for its percentage of fault as determined in the action brought by the plaintiff. Thus, total fault for a plaintiff's injuries must be apportioned among tortfeasors, and the jury makes that determination. ORS 31.610(2). In its fifth assignment, Deere contends that the trial court erred in instructing the jury that, in assessing Norton's percentage of fault, it may not consider Norton's negligence due to his inadvertent, inattentive, or awkward failure to discover or guard against the mower's defect.

In *Hernandez v. Barbo Mach. Co.*, 327 Or 99, 109, 957 P2d 147 (1998), relying on precedent in *Sandford v. Chevrolet Div. of Gen. Motors*, 292 Or 590, 610, 642 P2d 624 (1982), the Supreme Court held that it is a "long-established principle that a plaintiff's incidental carelessness or negligent failure to discover or guard against a product defect is not an appropriate defense" to a tort claim based on strict liability for injuries caused by a defective product. Thus, the court held, if the pleadings and the evidence support it, it is appropriate for the jury to be instructed that the negligence of the plaintiff is not a defense to a product liability claim "when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence." *See Sandford*, 292 Or at 610 (holding that "fault," under the predecessor statute to ORS 30.610, includes the plaintiff's negligence, "except for such unobservant, inattentive, ignorant, or awkward failure of

the injured party to discover the defect or to guard against it as is taken into account in finding the particular product dangerously defective"). Such an instruction, the court said, "is a correct statement of the law regarding the kinds of negligent behavior that the jury can and cannot attribute to a plaintiff in considering that party's proportional fault in a strict products liability action." *Hernandez*, 327 Or at 109.

Because Norton was not the injured plaintiff and there was no allegation of negligence on the child's part, the trial court here was unsure whether the instruction described in *Hernandez* had any bearing on plaintiff's claim or whether a similar instruction should be delivered in this case. But, believing that *Purdy III* required the giving of the instruction, the trial court instructed the jury as follows:

> "When comparing the fault of Deere and Norton, you may consider whether Norton's negligence was an inadvertent, inattentive, or awkward failure to discover or guard against any of the alleged defects in the Model L120D.

> "If you find that Norton's negligence was due to his inadvertent, inattentive, or awkward failure to discover or guard against the defect, then you may not consider this failure in assessing Norton's percentage of fault."

Thus, pursuant to the instruction, the apportionment of fault to Norton would not include fault attributable to Norton's negligent failure to recognize or guard against the mower's design defects—as distinct from Norton's other negligence in using the mower—and fault for Norton's failure to recognize or guard against the mower's design defects would be apportioned to Deere.

Deere does not dispute that, under *Hernandez* and other precedent, the court's instruction would have been correct if Norton had been an injured plaintiff. But Deere contends that the instruction applies only to *a plaintiff's* failure to recognize or guard against a product's defects. When the user of the defective product is a negligent tortfeasor and not the plaintiff, Deere contends, the instruction is not appropriate, because there is no authority under Oregon law that would relieve from liability a negligent tortfeasor other than the injured plaintiff.

Deere further contends that the statutes relating to apportionment of fault among multiple tortfeasors, ORS 31.600 to 31.605,[12] and the case law applying them, dictate that the jury apportion to each tortfeasor all of that tortfeasor's fault contributing to the injury. ORS 31.605(1)(b) (requiring that "the degree of each person's fault *** shall be expressed as a percentage of the total fault attributable to all persons").

Deere notes that, under Oregon's comparative-fault scheme, the jury is first required to assess each defendant's liability, and only then does the jury make an apportionment of fault. *Sandford*, 292 Or at 607 (requiring the jury to assess fault relative to faultless conduct before comparing the amounts of fault found). Thus, the determination of liability and the apportionment of fault are distinct steps. Defendant contends that the trial court's instruction on apportionment, after a determination of liability has been made, interferes with the proper application of the statutes, because it permits Norton to escape liability for the portion of his fault attributable to his negligent failure to perceive and guard against the mower's design defect.

Deere further urges that there is no case law that extends the rationale for the jury instruction required by *Sandford* and *Hernandez* to the circumstances here—where the negligent user of the product is not the injured plaintiff. However, this court *has* previously so extended it. In plaintiff's first trial, before Norton had been joined as a defendant, Deere contended that the child's injuries were due solely to Norton's negligence. *See* ORS 31.605(5) (provisions

---

[12] ORS 31.600(2) provides, in part:

"The trier of fact shall compare the fault of the claimant with the fault of any party against whom recovery is sought[.]"

ORS 31.605 provides, in part:

"(1) When requested by any party the trier of fact shall answer special questions indicating:

"(a) The amount of damages to which a party seeking recovery would be entitled, assuming that party not to be at fault.

"(b) The degree of fault of each person specified in ORS 31.600(2). The degree of each person's fault so determined shall be expressed as a percentage of the total fault attributable to all persons considered by the trier of fact pursuant to ORS 31.600."

regarding apportionment of fault do not "prevent a party from alleging that the party was not at fault in the matter because the injury or death was the sole and exclusive fault of a person who is not a party in the matter"). Deere had requested and the trial court gave an instruction that a manufacturer, distributor, or seller is not liable "when it delivers the product in a safe condition and subsequent mishandling or other causes make it harmful by the time it was used." Plaintiff objected to the instruction but contended that, if the jury was to be instructed regarding "mishandling" as a potential cause, "then it should also be instructed on the longstanding principle, acknowledged in *Hernandez*, that 'incidental carelessness or negligent failure to discover or guard against a product defect is not an appropriate defense to [a] products liability action for injuries suffered because of the product defect.'" *Purdy III*, 281 Or App at 416 (quoting *Hernandez*, 327 Or at 109 (alteration in *Purdy III*)). The trial court declined to give plaintiff's requested instruction.

On appeal, plaintiff asserted that the failure to give the requested instruction was error, because there was evidence in the record that would have permitted the jury to find that any negligence on the part of Norton was of the type that could not provide a defense in a product liability action, "that is, the negligent failure to discover or guard against the mower's alleged defects." *Purdy III*, 281 Or App at 420. Deere responded that the instruction was not appropriate, because the case did not involve an apportionment of fault and, further, because the record did not support the giving of the instruction. We held in *Purdy III* that *a user's negligence* in perceiving a defect is not a defense to a manufacturer's liability for injuries caused by the defective product. We agreed with plaintiff that the instruction was correct and should have been given, because the record supported it and the instruction would have told the jury that "it is not appropriate for the factfinder to take that type of negligence by a product's user into account when assessing whether a defective product is responsible for an injury that resulted from the use of the product." *Id.* at 423.

Deere contends that the trial court here mistakenly believed that it was required by *Purdy III* to give the *Sandford* instruction, because, as noted, when the case was

before us in *Purdy III*, Norton had not yet been joined as a defendant, and apportionment was not at issue. The question was whether the jury should nonetheless be instructed that Norton's negligence in failing to perceive the defect was not a defense to Deere's product liability.

But if, as we held in *Purdy III*, a product user's negligent failure to perceive and guard against a design defect is not a defense to the manufacturer's *liability* for the design defect itself, because, among other reasons, its users will not be aware of or guard against injuries of the type caused by the defective product, then, logically, the fault for that type of negligence must be attributed to the manufacturer. A jury should not be permitted to attribute to the user fault for the type of negligence for which the user cannot be held liable when making a comparative-fault assessment for injuries suffered by a plaintiff from the use of the defective product.[13] We conclude, for that reason, that the trial court did not err in giving the instruction that the jury could not consider Norton's negligence due to his inadvertent, inattentive, or awkward failure to discover or guard against the defect in assessing Norton's percentage of fault.

Reversed and remanded.

---

[13] We recognize that our conclusion in *Purdy III* expands on the original rationale for the instruction given in *Hernandez* that, as between a manufacturer that has designed a defective product and a plaintiff who has been injured by that defect, the plaintiff's incidental carelessness or negligent failure to discover or guard against the defect "is not an appropriate defense." *Hernandez*, 327 Or at 109 (citing *Findlay v. Copeland Lumber Co.*, 265 Or 300, 304-05, 509 P2d 28 (1973)).