No. 286     April 8, 2026     347

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Jeanyne JAMES;
Robin Colbert; Jane Drevo; Sam Drevo;
Brooke Edge and Bill Edge, Sr.; Lori Fowler; Iris Hampton;
James Holland; Rachelle McMcaster; Kristina Montoya;
Northwest River Guides, LLC;
Shariene Stockton and Kevin Stockton,
Victor Palfreyman; Palfreyman Family Trust;
Duane Brunn, individually and on behalf of all others
similarly situated; Alfred Cuozzo; Deborah Jo Fawcett;
David Giller, Sr.; Richard Jensen; Scott Johnson;
Frank King, individually and in his capacity as trustee of
the King Revocable Trust; Stephen David Nielsen;
Cory Staniforth; and Deborah Tank,
*Plaintiffs-Respondents*
*Cross-Appellants,*
*and*
Mary Kathleen BECHERER et al.,
*Plaintiffs,*
*and*
OREGON DEPARTMENT OF JUSTICE,
*Creditor-Respondent,*
*v.*
PACIFICORP,
an Oregon Corporation,
and Pacific Power, an Oregon registered electric utility
and assumed business name of PacifiCorp,
*Defendants-Appellants*
*Cross-Respondents.*
Multnomah County Circuit Court
20CV33885; A183140

Steffan Alexander, Judge.

Argued and submitted February 4, 2026.

Theodore J. Boutrous, Jr., California, argued the cause
for appellants-cross-respondents. On the briefs were Per A.

Ramfjord, Brad S. Daniels, Reilley D. Keating, and Stoel Rives LLP; Alison L. Plessman, Rajan S. Trehan, Stephanie W. Xiao, Khoa D. Nguyen, and Hueston Hennigan LLP, California; Douglas J. Dixon, Craig A. Fligor, and Hueston Hennigan LLP, California; and Blaine H. Evanson and Gibson, Dunn & Crutcher LLP, California.

Erin Roycroft and Nicholas Rosinia, Illinois, argued the cause for respondents-cross-appellants. Also on the answering brief and opening brief on cross-appeal were Alexander G. Tievsky, Megan Delurey, Schuyler Daum, Landon Webster, and Edelson PC, Illinois; Todd Logan and Edelson PC, California; Matthew J. Preusch and Keller Rohrback L.L.P., California; Daniel Mensher, Natida Sribhibhadh, and Keller Rohrback L.L.P., Washington; Yoona Park, Sarah R. Osborn, and Keller Rohrback L.L.P.; Keith A. Ketterling, Timothy S. DeJong, Cody Berne, Emily Johnson, and Stoll Stoll Berne Lokting & Shlachter P.C.; and Nicholas A. Kahl and Nick Kahl, LLC. Also on the reply brief were Lydia Anderson-Dana; Rafey Balabanian and Brandt Silver-Korn, and Edelson PC, California; Amy Hausmann, Zoë Seaman-Grant, and Edelson PC, Illinois; Derek C. Johnson, Marilyn A. Heiken, and Johnson Johnson Lucas & Middleton, PC.

Matthew J. Kalmanson and Hart Wagner LLP and Meghana D. Shah, John S. Pruitt, and Eversheds Sutherlands (US) LLP filed the brief *amicus curiae* for Associated Electric & Gas Insurance Services Limited.

Jeremy C. Rice and Parks Bauer LLP filed the brief *amicus curiae* for Oregon Association of Defense Counsel.

Irion Sanger, John Maxwell Greene, and Sanger Law, P.C., filed the brief *amicus curiae* for Oregon People's Utility Districts.

J. Aaron Landau and Harrang Long P.C. and Jeremy C. Marwell and Vinson & Elkins LLP, District of Columbia, filed the brief *amicus curiae* for Edison Electric Institute.

Paul S. Stewart and Paine Hamblen, P.S., Washington, filed the brief *amicus curiae* for Pacific Northwest Investor-Owned Utilities.

Iván Resendiz Gutierrez, KC Lynne Hovda, and Miller Nash LLP filed the brief *amicus curiae* for Oregon Business & Industry Association.

Sara Kobak and Andrew J. Lee filed the brief *amicus curiae* for Oregon Forest Industries Council.

Matthew Kirkpatrick and Oregon Consumer Justice Law P.C.; and Elizabeth Savage and Elizabeth Savage Law LLC filed the brief *amicus curiae* for Oregon Consumer Justice and Oregon Trial Lawyers Association.

No appearance for respondent Oregon Department of Justice.

Before Ortega, Presiding Judge, Joyce, Judge, and Hellman, Judge.

JOYCE, J.

Reversed and remanded.

**JOYCE, J.**

This class action proceeding arises from devastating wildfires that occurred in Oregon around Labor Day in 2020 during the course of what plaintiffs' counsel described in the trial court as a "historic windstorm."

A jury determined that defendant, PacifiCorp, a public utility providing electricity in various parts of Oregon, engaged in tortious acts or omissions in relation to certain of those wildfires and that those tortious acts or omissions caused plaintiffs to suffer both economic and noneconomic damages. PacifiCorp appeals the resulting limited judgments against it, raising thirteen assignments of error. Plaintiffs cross-appeal, raising two cross-assignments of error.

In this opinion, we address PacifiCorp's fourth assignment of error, which, with one exception noted below, is dispositive as to the issues before us on appeal. In that assignment, PacifiCorp contends that the trial court erred in instructing the jury that in determining whether PacifiCorp was liable to plaintiffs it could "assume that the evidence at the trial applies to all class members." We agree with PacifiCorp that the trial court erred in giving that instruction to the jury. We conclude that, given this particular class action proceeding—that is, the nature of the class the trial court certified, the evidence presented, and plaintiffs' theories of causation—that instruction was legally erroneous, because certain evidence at trial, particularly related to causation, did not necessarily apply to every class member. We further conclude that giving the instruction was prejudicial to PacifiCorp. Consequently, we reverse and remand.

## I.   INTRODUCTION

Prior to turning to the facts of this case, to put the jury instruction that is at issue in PacifiCorp's fourth assignment of error and the facts of this case in their proper context, we summarize the legal framework under which class certification occurs in Oregon. We also provide an overview of the class that was certified in this case and plaintiffs' theories of causation at trial.

"The standards that govern class certification are set out in ORCP 32." *Pearson v. Philip Morris, Inc.*, 358 Or 88, 106, 361 P3d 3 (2015). Under ORCP 32, "a class certification determination divides into two basic inquiries." *Id.*

First, "the trial court must determine if the action meets five prerequisites" set forth in ORCP 32 A:

"[1]   The class must be so numerous that simple joinder is impracticable ('numerosity'); [2] there must be questions of law or fact common to the class ('commonality'); [3] the named representatives' claims must be typical of those of the class ('typicality'); [4] the named representatives must be individuals who will adequately protect the interests of the class ('adequacy'); and [5] prelitigation notice requirements must have been complied with ('notice')."

*Pearson*, 358 Or at 106 (quoting ORCP 32 A). If any one of the five requirements is not satisfied, the case cannot go forward as a class action. *Id.*

Second, the trial court must determine whether "a class action is superior to other available methods for the fair and efficient adjudication of the controversy," ORCP 32 B, by looking to the factors identified in ORCP 32 B. That rule identifies eight "factors 'pertinent' to assessing superiority." *Pearson*, 358 Or at 106 (quoting ORCP 32 B). The third of those factors, "predominance"—*i.e.*, "the extent to which questions of law or fact common to the members of the class predominate over any questions affecting only individual members," ORCP 32 (B)(3)—is one that "frequently drives class certification decisions," though neither "the 'predominance' factor nor any of the other seven [factors] is controlling," *Pearson*, 358 Or at 106.

Predominance, "[i]n effect, *** asks: What do the individual class members have in common, what don't they have in common, and how much will those similarities and dissimilarities matter in litigating the case?" *Id.* at 110-11. The inquiry is "designed to determine if proof as to one class member will be proof as to all, or whether dissimilarities among the class members will require individualized inquiries." *Id.* at 111; *Delgado v. Del Monte Fresh Produce, N. A., Inc.*, 260 Or App 480, 491, 317 P3d 419, *rev den*, 355 Or 380 (2014) (noting that "the class certification question requires

us to look at whether the claimed common issues are susceptible to and appropriate for proof by common evidence"); *accord Black Lives Matter Los Angeles v. City of Los Angeles*, 113 F4th 1249, 1264 (9th Cir 2024) (holding that a class cannot be certified when plaintiffs "merely alleg[e] that a policy applies class-wide—and that a common question thus exists—without showing how common evidence can be used to prove their claims across the class members").

The predominance inquiry is a "pragmatic" one, turning on the evidence predicted to be presented at trial:

> "whether common issues predominate in a particular case for purposes of class certification depends on a pragmatic assessment of how a case, if fairly and fully tried, is likely to be litigated. The point of asking whether common issues predominate is to predict the degree to which litigation of the controversy will require delving into individualized proof or, conversely, the degree to which the issues lend themselves to resolution through common proof—that is, proof for one individual class member will be proof for all."

*Pearson*, 358 Or at 114.

The question of "the degree to which the issues lend themselves to resolution through common proof," *id.*, is important, because to prevail, the plaintiffs in a class action must prove their claims as to all class members. *See Strawn v. Farmers Ins. Co.*, 350 Or 336, 358, 258 P3d 1199, *adh'd to on recons*, 350 Or 521, 256 P3d 100 (2011), *cert den*, 565 US 1177 (2012) (noting that, to "prevail in a class action for fraud, the class plaintiff must prove reliance on the part of all class members"); *accord Bowerman v. Field Asset Servs., Inc.*, 60 F4th 459, 479 (9th Cir 2023) (holding that "a putative employer cannot be liable to an entire class of putative employees for failing to reimburse their business expenses and pay them overtime unless the putative employer in fact failed to do so *for each of them*" (emphasis added)).

The decision to certify a class is generally forward-looking; a prediction of how a case is "likely to be litigated." *Pearson*, 358 Or at 114. But trial courts retain the authority under ORCP 32 C(1) to "alter or amend" class certification decisions at any time "before the decision on the merits." *See also James v. PacifiCorp*, 323 Or App 764,

777-78, 524 P3d 506 (2023) (noting, in declining to exercise our discretion to accept an interlocutory appeal in this case of the trial court's class certification decision, that the trial court may "rescind or amend its certification order at any point prior to a decision on the merits, if the litigation does not pan out the way the court expects").

Indeed, "because the results of class proceedings are binding on absent class members," federal courts considering the parallel Federal Rule of Civil Procedure concerning the alteration or amendment of class certification orders, FRCP 23(c)(1)(C), have held that the district court has not just the authority to alter or amend class certification orders when necessary but an "*affirmative duty* of monitoring its class decisions in light of the evidentiary development of the case."[1] *Mazzei v. Money Store*, 829 F3d 260, 266-67 (2d Cir 2016), *cert den*, 580 US 1198 (2017) (emphasis added; internal quotation marks omitted); *see Barnes v. Am. Tobacco Co.*, 161 F3d 127, 140 (3d Cir 1998), *cert den*, 526 US 1114 (1999) ("Under Rule 23(c)(1), District Courts are required to reassess their class rulings as the case develops.").

Ultimately, as federal courts have recognized, the ability of trial courts to revisit class certification decisions in light of how a case develops protects "absent class members['] *** due process rights (and defendants') by ensuring that any class claim that proceeds to final judgment—and thus binds them—is fairly and appropriately the subject of class treatment." *Mazzei*, 829 F3d at 268.

In this case, as explained in more detail below, the trial court certified a single issues class and specified "fourteen issues" for "classwide treatment."[2] Nevertheless, at the

---

[1] FRCP 23(c)(3)(C) provides, "An order that grants or denies class certification may be altered or amended before final judgment."

[2] Among the fourteen issues certified for class-wide treatment were:

"1. What was PacifiCorp's level of culpable conduct in the operation of its utility infrastructure?

"*****

"3. Was PacifiCorp's conduct a cause of harm to the class?

"4. If PacifiCorp's conduct was a cause of harm to the class, was that harm reasonably foreseeable?

"5. Did PacifiCorp's action or inaction cause or contribute to the cause of the wildfire or cause or contribute to the spreading of the wildfire?

end of the trial, it ultimately submitted to the jury the question of PacifiCorp's liability for the various causes of action alleged in plaintiffs' complaint.

The single class in this case included the owners of over 2,000 parcels of property that were damaged by at least four different wildfires—the 242 Fire, the South Obenchain Fire, the Echo Mountain Complex Fire, and the Santiam Canyon Fire—certain of which were separated by well over a hundred miles. For each of those four wildfires, the trial court identified a "boundary" based on what its certification order termed the "maximum extent of burn" for each wildfire.

For three of the wildfires—the 242 Fire, the South Obenchain Fire, and the Echo Mountain Complex Fire—plaintiffs' theory at trial was that a particular, identifiable ignition started a wildfire, which burned throughout that particular wildfire's boundaries, and that "but for" PacifiCorp's tortious acts and omissions, the wildfire would not have occurred, and plaintiffs would not have been harmed.

Plaintiffs' theory was different for the largest of those four wildfires: the Santiam Canyon Fire. For that wildfire—unlike the other wildfires—plaintiffs did not have a single, unified theory of causation as to how plaintiffs within the Santiam Canyon Fire boundary were harmed by PacifiCorp. Instead, they argued that the evidence permitted a finding that plaintiffs who owned property in the Santiam Canyon were harmed either by (1) one of any number of PacifiCorp-caused fires, when those fires destroyed plaintiffs' property in the Santiam Canyon directly, or (2) alternatively, for some of the plaintiffs in the Santiam Canyon, by a lightning-caused wildfire, which was burning to the northeast of the Santiam Canyon before Labor Day 2020 and swept

---

"*****

"7.  Did PacifiCorp's action or inaction bring about an unauthorized entry into property in the exclusive possession of another?

"8.  Did PacifiCorp's culpable conduct cause the trespass or, alternatively, did PacifiCorp act intentionally, knowing that a trespass would result from their actions—and a trespass did indeed occur as a result of those actions?
"*****

"14.  Was the damage to Class Members' property the necessary, certain, predictable, or inevitable result of PacifiCorp's actions?"

through the Santiam Canyon after the PacifiCorp-caused fires were ignited in the Santiam Canyon. In making the latter argument—that the lightning-caused wildfire burnt plaintiffs' property—plaintiffs' theory was that certain fires in the Santiam Canyon caused by PacifiCorp's power equipment caused firefighters who were stationed in the Santiam Canyon to evacuate the Santiam Canyon, leaving it "defenseless." Additionally, for the Santiam Canyon Fire, the trial court instructed the jury that PacifiCorp was liable if its acts or omissions were a "substantial factor" in causing harm to the plaintiffs.

Notwithstanding that the single class in this case consisted of plaintiffs who were located in the "maximum extent of burn" for four different wildfires, which burnt in four different geographic locations in Oregon, and that plaintiffs' theory of causation as to one of those wildfires— the Santiam Canyon Fire—was different than the others, ultimately, plaintiffs requested a jury instruction based on California Civil Jury Instructions (CACI), Instruction No. 115, "Class Action Defined[.]" That instruction told the jury that, "You may assume that the evidence at the trial applies to all class members." And plaintiffs' counsel argued to the jury that it could "assume that the evidence that came in applies to the class members as a whole." It is that jury instruction that PacifiCorp challenges in its fourth assignment of error.

We conclude that given the particular class that the trial court certified in this case and the evidence and theories at trial, the trial court erred in instructing the jury that it could "assume that the evidence at the trial applies to all class members." Although that instruction might be appropriate in some class actions—where every important issue is truly capable of proof through common evidence—it was erroneous to give in this case, where much of the evidence introduced during the trial related to particular issues concerning particular wildfires (and for the Santiam Canyon Fire, to particular ignitions at particular locations in the Santiam Canyon). We also conclude that that error was prejudicial to PacifiCorp.

Consequently, we reverse and remand.

## II.   HISTORICAL AND PROCEDURAL FACTS

With that context, we turn to the historical and procedural facts, first discussing the complaint and the certified class, then turning to plaintiffs' theories of PacifiCorp's tortious conduct and causation during trial, plaintiffs' request for the jury instruction that PacifiCorp challenges in its fourth assignment of error, plaintiffs' mid-trial motion to reduce the boundary for the Santiam Canyon Fire, and, finally, we turn to plaintiffs' closing argument and the verdict form.

Further, we set those items out in some detail, because in assessing whether an erroneous jury instruction caused prejudice, we must consider "the record as a whole" in "the light of the parties' theories at trial." *Purdy v. Deere & Co./Norton*, 311 Or App 244, 259, 492 P3d 99, *rev den*, 369 Or 110 (2021).

### A.   *The Complaint and the Certified Class*

As noted, numerous devastating wildfires burned in Oregon around Labor Day in 2020. Plaintiffs' complaint asserted that PacifiCorp's tortious acts and omissions caused four of those wildfires, which were referred to in the trial court as (1) the 242 Fire, which burnt approximately 13,829 acres near Chiloquin, (2) the Echo Mountain Complex Fire (made up of two separate fires, the Echo Mountain Fire and the Kimberling Fire), which burnt approximately 1,890 acres near Lincoln City, (3) the South Obenchain Fire, which burnt approximately 29,531 acres near Eagle Point, and (4) the Santiam Canyon Fire, which burnt approximately 45,660 acres in the Santiam Canyon.

As relevant here, in the operative complaint, plaintiffs asserted claims against PacifiCorp for negligence, gross negligence, public nuisance, private nuisance, and trespass in relation to those wildfires. The operative complaint identified 17 named plaintiffs—one within the boundary of the 242 Fire, four within the boundary of the Echo Mountain Complex Fire, two within the boundary of the South Obenchain Fire, and 10 within the boundary of the Santiam Canyon Fire.

Plaintiffs moved for class certification. The trial court ultimately certified an "issues class" consisting of "owners or residents" of "privately owned real property" within the "boundary of the maximum extent of burn" for the 242 Fire, the Echo Mountain Complex Fire, the South Obenchain Fire, and the Santiam Canyon Fire, whose properties experienced "fire activity during those fires." Additionally, the class included "owners of a motorhome, residential trailer, manufactured dwelling, other mobile home, or any other personal property" that was located on any property within the "boundary of the maximum extent of burn" for the 242 Fire, the Echo Mountain Complex Fire, the South Obenchain Fire, or the Santiam Canyon Fire who "experienced fire activity during those fires," and "whose motorhome, residential trailer, manufactured dwelling, other mobile home, or any other personal property, experienced fire damage during those fires."

The trial court's class certification order bifurcated the case into two phases: During Phase I, the jury would decide certain liability questions on a class-wide basis, and, assuming PacifiCorp was found liable, determine the amount of damages due to the 17 named class representatives. Phase II would consist of individual damages proceedings for the absent class members.

The trial court ultimately instructed the jury that a single class was certified, and as to the composition of that class, the court instructed the jury as follows:

**"CLASS DEFINED**

"* * * * *

"* * * In this case, the class consists of all:

"(1)   owners or residents, as of September 7, 2020, of any (a) privately owned real property; (b) that is wholly or partially within the boundary of the maximum extent of burn for the Echo Mountain Fire, the Kimberling Fire, the South Obenchain Fire, the 242 Fire, or the Santiam Canyon Fire; and (c) experienced fire activity during those fires; or (2) owners of a motorhome, residential trailer, manufactured dwelling, other mobile home, or any other personal property that as of September 7, 2020, was located on any property (a) wholly or partially within the boundary of

the maximum extent of burn for the Echo Mountain Fire, the Kimberling Fire, the South Obenchain Fire, the 242 Fire, or the Santiam Canyon Fire; that (b) experienced fire activity during those fires; and (c) whose motorhome, residential trailer, manufactured dwelling, other mobile home, or any other personal property, experienced fire damage during those fires."[3]

(Boldface and uppercase in original.)

### B.   *Plaintiffs' Theories of Tortious Conduct and Causation*

Following class certification, the Phase I trial began. During the trial, plaintiffs pointed to what they viewed as myriad tortious failures on PacifiCorp's part which, in their view, resulted in the 242 Fire, the Echo Mountain Complex Fire, the South Obenchain Fire, and the Santiam Canyon Fire. They contended, for example, that, for each of those wildfires, PacifiCorp tortiously failed to ensure vegetation was a safe distance from electrical equipment, failed to shut off power before and during the Labor Day 2020 windstorm, and failed to adequately monitor the windstorm.[4]

---

[3] Because the trial court's class certification order bifurcated the case into two "phases"—one involving questions of liability and one involving damages—it bears mentioning that "[a] class action is not inappropriate simply because each class member will have to make an individualized showing to recover damages." *Migis v. AutoZone, Inc.*, 282 Or App 774, 787, 387 P3d 381 (2016), *adh'd to on recons*, 286 Or App 357, *rev den*, 362 Or 300 (2017) (internal quotation marks omitted).

[4] More specifically, in the final jury instructions, the jury was instructed that plaintiffs had alleged that, "for each of the four fires in this case":

"a. Defendant failed to reasonably inspect their power line infrastructure for hazardous conditions.

"b. Defendant failed to reasonably clear vegetation around power line infrastructure to mitigate the risk of fire.

"c. Defendant failed to reasonably de-energize power lines during critical and extremely critical fire conditions, when Defendant knew or in the exercise of reasonable care should have known that the then-present fire conditions would cause energized lines to fall or otherwise contact vegetation, structures, and objects.

"d. Defendant failed to reasonably de-energize power lines during the then-present critical and extremely critical fire conditions even after Defendant had knowledge that some power lines had fallen or otherwise come into contact with vegetation, structures, and objects.

"e. Defendant failed to reasonably de-energize power lines even after fires had been ignited by their power line infrastructure.

"f. Defendant failed to disable reclosers during critical and extremely critical fire conditions.

With respect to causation, as discussed above, plaintiffs presented different theories of causation regarding the 242 Fire, the Echo Mountain Complex Fire, and the South Obenchain Fire, on the one hand, and the Santiam Canyon Fire, on the other.

1. *The 242 Fire, the South Obenchain Fire, and the Echo Mountain Complex Fire—"but for" causation*

Plaintiffs' theory at trial regarding the 242 Fire, the South Obenchain Fire, and the Echo Mountain Complex Fire (both the Kimberling ignition and the Echo Mountain ignition) was that those wildfires were started when vegetation came into contact with PacifiCorp's energized power lines at particular locations, and that vegetation came into contact with PacifiCorp's energized power lines because PacifiCorp had tortiously acted or failed to act.

More specifically, for each of the 242 Fire, the South Obenchain Fire, the Kimberling Fire, and the Echo Mountain Fire, plaintiffs identified a single ignition point and presented evidence from which the jury could find that that ignition started a fire, which spread throughout the particular wildfire's boundary, causing harm to the property of the plaintiffs in that particular wildfire's boundary.

PacifiCorp, for its part, presented evidence from which the jury could find that neither the South Obenchain Fire nor the Echo Mountain Fire were started when vegetation came into contact with PacifiCorp power lines at the purported ignition points identified by plaintiffs. With respect to the 242 Fire, PacifiCorp acknowledged that the cause of the 242 Fire was vegetation coming into contact with PacifiCorp power lines, but it asserted that it was not tortious in failing to identify the particular tree that caused

"g. Defendant failed to reasonably implement policies and procedures, and use equipment, to avoid igniting or spreading fire.

"h. Defendant failed to reasonably adjust their operations despite warnings about weather conditions that could cause rapid and dangerous fire growth and spread on and after Labor Day.

"i. The fires ignited by Defendant on Labor Day diverted crucial resources from the fire areas.

"j. Defendant failed to obtain granular weather information to evaluate shutting off the power outside of limited areas designated Fire High Consequence Areas *** or Proactive De-energization Zones ***."

the wildfire as a hazardous tree. PacifiCorp also did not dispute that the Kimberling Fire was caused when vegetation came into contact with electrical equipment.

With regard to the 242 Fire, the South Obenchain Fire, and the Echo Mountain Complex Fire, given plaintiffs' theory of causation, the trial court instructed the jury on the "but for" causation standard:

### "CAUSATION—'BUT FOR'

"Your determination of 'cause' in this case for the Echo Mountain Fire, the Kimberling Fire, the South Obenchain Fire, and the 242 Fire may be made by using what is known as the 'But For' causation standard, which is defined as follows:

"The defendant's conduct is a cause of the plaintiffs' harm if the harm would not have occurred but for that conduct; conversely, the defendant's conduct is not a cause of the plaintiffs' harm if that harm would have occurred without that conduct."

(Boldface and uppercase in original.)

2. *The Santiam Canyon Fire—"substantial factor" causation*

Plaintiffs' theory as to how PacifiCorp caused the fire damage within the Santiam Canyon Fire boundary—which, as noted, is approximately 45,660 acres (*i.e.*, approximately 71 square miles)—was markedly different, both factually and legally, than their theory as to the 242 Fire, the South Obenchain Fire, and the Echo Mountain Complex Fire.

That is at least in part because prior to fires in the Santiam Canyon that plaintiffs attributed to PacifiCorp, to the northeast of the Santiam Canyon, another wildfire was burning: the Beachie Creek Fire. The Beachie Creek Fire was ignited by lightning, not PacifiCorp. And it is undisputed that at some point around Labor Day 2020 the Beachie Creek Fire burned through Santiam Canyon where class members had property. At trial, the disputes with respect to the Beachie Creek Fire were largely (1) when, in particular, the Beachie Creek Fire burned through the Santiam Canyon, and (2) whether PacifiCorp's power equipment or

embers from the Beachie Creek Fire were responsible for certain ignitions within the Santiam Canyon itself.

Specifically, at trial, regarding the Santiam Canyon Fire, plaintiffs presented evidence that a number of ignitions that occurred in the Santiam Canyon were attributable to PacifiCorp, but it did not seek to identify them all, instead telling the jury "we'll never know just how many fires [PacifiCorp] started in the canyon that night."[5] The particular fires that plaintiffs identified and attributed to PacifiCorp included fires at particular locations in the Santiam Canyon—*e.g.*, at the Gates School, at Potato Hill, at Kelly Lumber, at Fishermen's Bend, at Gates Bridge East, and at 832 North Santiam Highway. Those ignitions included two ignitions—the one at the Gates School and the one at Fishermen's Bend—that plaintiffs argued forced the evacuation of wildland firefighting crews who otherwise could have combatted the fires in the Santiam Canyon. As plaintiffs put it, the evacuation of those crews left the "entire Santiam Canyon[] defenseless against fires both already there and those that come that night."

Plaintiffs also presented evidence from which the jury could find that some of those fires grew quite large—highlighting during their closing argument that the fire at the Gates School had flames that were "50 feet in the air," that the fire at Fisherman's Bend caused the campground to be "engulfed in flames," and that the fire at Kelly Lumber was "hundreds of acres."[6]

Plaintiffs also presented the testimony of a fire progression expert with respect to the Beachie Creek Fire.

---

[5] In advancing their argument in the trial court, plaintiffs highlighted a spoliation instruction that had been given to the jury based on PacifiCorp purportedly destroying evidence after the fires in the Santiam Canyon. On appeal, PacifiCorp does not assign error to the trial court giving that instruction.

[6] Given the particular evidence at trial and arguments made below and on appeal, the precise number of fires plaintiffs attributed to PacifiCorp's equipment igniting in the Santiam Canyon is difficult to pin down—in their briefing, plaintiffs contend that their expert "identified over a dozen ignitions in the Santiam Canyon on the evening of September 7" attributable to PacifiCorp; at oral argument, plaintiffs' counsel noted "10 or 15 fires" started in the Santiam Canyon by PacifiCorp; and in its response to PacifiCorp's directed verdict motion in the trial court, plaintiffs noted their expert testified to "about 16 fires associated with PacifiCorp's power infrastructure."

That expert testified, as plaintiffs put it on appeal, that the Beachie Creek Fire "did not reach the Canyon until after midnight"—*i.e.*, until after PacifiCorp's power lines had, in plaintiffs' view, started numerous fires in the Santiam Canyon and caused the evacuation of firefighters.

Having presented evidence of certain fires that were started by PacifiCorp in the Santiam Canyon, that those fires caused firefighters to evacuate, and that those fires started prior to the Beachie Creek Fire reaching the Santiam Canyon, plaintiffs' theory regarding PacifiCorp's culpability for harm to individuals whose property in the Santiam Canyon was damaged by fire was that (1) PacifiCorp's conduct during Labor Day weekend (and before) was tortious, and caused numerous fires throughout the Santiam Canyon prior to the arrival in the Santiam Canyon of the Beachie Creek Fire; (2) the fires that PacifiCorp caused in the Santiam Canyon resulted in firefighters who were stationed in the Santiam Canyon to fight the Beachie Creek Fire evacuating; and (3) some combination of either PacifiCorp-caused fires and/or the Beachie Creek Fire (which firefighters were unable to stop because they evacuated) resulted in harm to the class members in the Santiam Canyon.[7]

PacifiCorp, for its part, disputed that it was responsible for many of the fires in the Santiam Canyon that plaintiffs argued it was responsible for, although it did acknowledge that it was responsible for the fire at the Gates School. PacifiCorp instead pointed to embers from the Beachie Creek Fire as the cause of many of the "spot fires" in the Santiam Canyon, and PacifiCorp presented its own fire progression expert who testified that the Beachie Creek Fire burned through the Santiam Canyon earlier than plaintiffs

---

[7] As plaintiffs put it on appeal with respect to the Beachie Creek Fire, "the jury could have concluded that firefighting personnel would have been in a position to contain the Beachie Creek Fire before it reached class member properties but for the fact that a power-line fire caused these personnel to evacuate the Canyon." And as plaintiffs explained to the trial court in a response to PacifiCorp's motion to stay the Phase II damages trials during the pendency of this appeal, "even setting aside the destruction PacifiCorp's own fires caused, the jury considered that people in the Santiam Canyon unnecessarily lost their homes and businesses *from the Beachie Creek Fire* because of PacifiCorp's gross negligence that night." (Emphasis in original.)

contended. PacifiCorp also presented evidence that certain fires that plaintiffs identified as having been caused by PacifiCorp did not spread widely. Finally, PacifiCorp presented evidence that its service area did not include the eastern part of the Santiam Canyon.

Ultimately, given plaintiffs' theory of PacifiCorp's culpability for harm to individuals whose property in the Santiam Canyon was damaged as a result of wildfires, the trial court instructed the jury on the "substantial factor" causation standard regarding that wildfire:

### "CAUSATION—'SUBSTANTIAL FACTOR'

"Your determination of 'cause' in this case for Santiam Canyon Fire may be made by using what is known as the 'Substantial Factor' causation standard, which is defined as follows:

"Many factors or things may operate either independently or together to cause harm. In such a case, each may be a cause of the harm even though the others by themselves would have been sufficient to cause the same harm.

"If you find that the defendant's act or omission was a substantial factor in causing the harm to the plaintiffs, you may find that the defendant's conduct caused the harm even though it was not the only cause. A substantial factor is an important factor and not one that is insignificant."

(Boldface and uppercase in original.)

C.  *Plaintiffs' Proposed Special Jury Instruction—"You may assume that the evidence at the trial applies to all class members."*

With that understanding of the evidence presented and plaintiffs' theories of causation, we now turn to the jury instruction at issue in defendant's fourth assignment of error.

During the trial, plaintiffs requested the jury be instructed with special jury instructions concerning class actions. One of plaintiffs' requested special instructions included a sentence reading, "You may assume that the evidence at the trial applies to all class members except as I specifically tell you otherwise," which was based on CACI No.

115, "Class Action Defined."[8] PacifiCorp objected to use of that instruction, and proposed its own special jury instructions.

In arguing that the trial court should provide their special jury instruction, plaintiffs contended that the instruction explained to the jury that plaintiffs could "use class-wide proof" to prove their claims, and that they did not need "to go door-to-door, property-to-property to prove [their] case." PacifiCorp took the position that the instruction was improper, noting that, "[w]hatever the manner of proof, whether it's common or individualized, [plaintiffs] still have their burden of proving their case as to the entire class and each of its members."

The trial court ultimately adopted plaintiffs' instruction, with slight modifications, concluding:

"The plaintiffs' instruction, in part, is more aligned with CACI 115. The correct sentence for plaintiffs' instructions is a direct quote from CACI 115.

"You may assume that the evidence at trial applies to all class members, except as I specifically tell you otherwise."

Later in the proceedings, PacifiCorp again took exception to the special instruction plaintiffs had proposed, moving the trial court to strike the sentence, "You may assume that the evidence at the trial applies to all class members, except as I specifically tell you otherwise." PacifiCorp argued that the instruction is an "unnecessary comment on the evidence," it "doesn't fit with this case, at a minimum, because we have four different fires," and it "suggests to the jury that the Court is going to give them further instruction about the evidence, which the parties aren't contemplating."

---

[8] CACI No. 115 provides:

"A class action is a lawsuit that has been brought by one or more plaintiffs on behalf of a larger group of people who have similar legal claims. All of these people together are called a 'class.' [Name of plaintiff] brings this action as the class representative.

"In a class action, the claims of many individuals can be resolved at the same time instead of requiring each member to sue separately. Because of the large number of claims that are at issue in this case, not everyone in the class will testify. You may assume that the evidence at this [stage of the] trial applies to all class members [except as I specifically tell you otherwise]. All members of the class will be bound by the result of this trial."

(Brackets in original.)

The trial court granted PacifiCorp's motion, in part, striking the portion of the sentence reading "except as I specifically tell you otherwise," but otherwise kept the special jury instruction. In doing so, the trial court noted again that the remainder of the sentence—"Assume that the evidence at the trial applies to all class members"—is "a direct quote from" CACI No. 115.

Ultimately, in instructing the jury, the trial court provided the following special instruction:

### "CLASS QUESTIONS DEFINED

"Only some questions on the verdict form are common to all class members. Those questions are called the class questions. The class questions will be specified on the verdict form that you will use in the jury room. In answering the class questions, you must determine the answer as to the class. *Because the case is a class action, you can answer the class questions based on evidence that applies to the class as a whole.* There is no requirement that individual class members appear in court to prove their case. *You may assume that the evidence at the trial applies to all class members.* You should interpret the class questions according to these instructions and the verdict form, understanding that for the purposes of these class questions, the class is considered the plaintiff. Each class question is broken down by fire."

(Boldface and uppercase in original; emphases added.)

D.  *Plaintiffs' Motion to Modify the Boundary for the Santiam Canyon Fire*

Given how the trial developed, after plaintiffs had presented their rebuttal case and the trial court had instructed the jury, but before closing argument, plaintiffs made a motion to reduce the size of the class area in the Santiam Canyon so as to "conform the class *** boundary to the evidence presented at trial[.]" Plaintiffs presented the trial court with a "rough" map that reduced the size of the Santiam Canyon Fire boundary by what appears to be over half.

That map, which follows, proposed excising from the Santiam Canyon Fire boundary the section of the map below that plaintiffs' counsel drew Xs through:



Plaintiffs explained to the trial court that they proposed a new boundary for the Santiam Canyon Fire class area because the area to the west of the vertical black line was the area that "evidence suggests is predominant to the class[.]" Plaintiffs further told the court that the vertical black line "signifies a predominance line." That is, plaintiffs told the trial court that by excising the eastern half of the Santiam Canyon Fire from the class boundary, the new boundary on the eastern end, which was "adjacent to Potato Hill," would reflect the "eastern most predominant boundary indicated during trial."

We understand plaintiffs' counsel to have drawn the line near Potato Hill as the fire at Potato Hill, along with other fires close to Potato Hill, were the easternmost fires in the Santiam Canyon that plaintiffs' "cause and origin" expert identified as being attributable to PacifiCorp.

PacifiCorp opposed the motion, arguing among other points, that it would be prejudicial to change the boundary after it had built its "whole case" and "closing" around the "evidence that has come in[.]" The trial court denied the motion.

E.   *The Verdict Form, Closing Argument, and the Verdict*

Finally, we turn to the structure of the verdict form in this case as well as aspects of plaintiffs' closing argument that have bearing on our analysis.

1.   *The verdict form*

The verdict form that the trial court provided to the jury asked the jury, for each claim, (1) whether defendant's conduct was tortious as to plaintiffs and the entire class, and it required a separate response to that question for each of the four wildfires, (2) whether that tortious conduct was a cause of harm to the named plaintiffs, and, again, required a separate response for each of the four wildfires, and finally, (3) whether the tortious conduct was "a cause of harm to the entire class," and, again, required a separate response for each of the four wildfires.

2.   *The closing argument and the verdict*

Both in their closing argument and rebuttal closing argument to the jury, plaintiffs emphasized the jury instruction that PacifiCorp now challenges on appeal.

In their closing, plaintiffs told the jury:

"[Y]ou can assume—this is in your jury instructions—that the evidence at trial applies to all class members. It's not as though each and every class member is required to be in this courtroom and to explain what happened that night to you. That would be unreasonable. So you can assume based on the evidence. And the class questions allow you to do that."

Then, in their rebuttal closing argument, plaintiffs again relied on the instruction that PacifiCorp now challenges on appeal, this time pointing to specific named plaintiffs who were harmed by specific fires in the Santiam Canyon, as well as pointing to a particular plaintiff who lived near Echo Mountain, and encouraged the jury to apply that evidence to "the class members as a whole":

"You can assume that the evidence that came in applies to the class members as a whole. The Judge has instructed that you don't need to hear from each and every class

member to say there's a fire that harmed my property, et cetera. You can assume the evidence applies to the class as a whole.

"And there's no better example if you're thinking about who was harmed by the fires. For example, [one of the named plaintiffs] at Fisherman's Bend. No dispute there's a fire at Fisherman's Bend. It destroys everything [that plaintiff] has ever known, has ever possessed in this world.

"[Two other plaintiffs] live right across the street from the ignition at 832 North Santiam Highway. [Another plaintiff was] right by the fire at Gates Hill Road. [Two other plaintiffs] live right by Echo Mountain. They see the ignition."

Additionally, plaintiffs argued to the jury that, for the Santiam Canyon Fire, in view of the "substantial factor" causation instruction, the jury could find that PacifiCorp was liable based on PacifiCorp being "a cause" of the harm in the Santiam Canyon (which, as noted above, was over 70 square miles):

"For the Santiam Canyon, the question is simply, were they a cause of the harm that night; not the cause, not the only cause, but a cause of the harm. Of course they were a cause of the harm. They admit they started fires in the Santiam Canyon. They admit they caused harm in the Santiam Canyon."

After deliberating, the jury returned verdict in favor of plaintiffs on their claims of negligence, gross negligence, public nuisance, private nuisance, and trespass.

### III.   ANALYSIS OF PACIFICORP'S FOURTH ASSIGNMENT OF ERROR

With that background, we turn to our analysis of PacifiCorp's fourth assignment of error. As noted, in its fourth assignment of error, PacifiCorp contends that the trial court erred when it instructed the jury that the jury could "assume that the evidence at the trial applies to all class members."

### A.   *Legal Standard*

For claims of instructional error, "we review a trial court's decision to give a particular instruction primarily

to determine whether the instruction, when read together with the other instructions given, completely and accurately stated the law applicable to the case and, if not, whether any error in giving the instruction was prejudicial to the party opposing the instruction." *Sherertz v. Brownstein Rask*, 288 Or App 719, 722, 407 P3d 914 (2017). As the Supreme Court has explained:

> "'The parties to any jury case are entitled to have the jury instructed in the law which governs the case in plain, clear, simple language. The objective of the mold, framework and language of [jury] instructions should be to enlighten and to acquaint the jury with the applicable law. Everything which is reasonably capable of confusing or misleading the jury should be avoided. Instructions which mislead or confuse are ground for a reversal or a new trial.'"

*Id.* (quoting *Williams et al. v. Portland Gen. Elec.*, 195 Or 597, 610, 247 P2d 494 (1952) (brackets in *Sherertz*)).

If the trial court's giving of a particular jury instruction was erroneous, in assessing whether giving the instruction was "prejudicial," the question for us is "whether—in an important or essential manner—the error had a detrimental influence on a party's rights." *Id.* at 727 (internal quotation marks omitted). To make that assessment, "[w]e review the record to assess the likelihood that the error permitted the jury to reach an incorrect result." *Id.*

If there "is 'little likelihood' that an error affected the verdict, we may not reverse; if there is 'some' likelihood or a 'significant' likelihood that the error influenced the jury's verdict, we must reverse." *Id.* And "[i]n the context of instructional error, that standard will generally be met if, when the instructions are considered as a whole in light of the evidence and the parties' theory of the case at trial[,] there is some likelihood that the jury reached a legally erroneous result." *Id.* at 727-28 (internal quotation marks omitted).

**B.  *The Parties' Arguments***

On appeal, PacifiCorp argues that the instruction was erroneous because "by allowing the jury to apply the evidence relating to some individual class members to ***all***

class members," the trial court "expressly relieved Plaintiffs of their evidentiary burden of presenting evidence and proving their claims as to each individual class member." (Boldface and emphasis in PacifiCorp's brief.)

PacifiCorp acknowledges that there may be "circumstances where a jury may infer that individual evidence applies to the whole class" but contends that "for that inference to arise and be reasonable, the same conduct must have occurred without material variation to the members of the class." (Internal quotation marks, brackets, and emphasis omitted.) That was not the circumstance here according to PacifiCorp, because "the jury needed to consider four different sets of liability and causation evidence applicable to the four different fire areas within the class boundary" and "even *within* each of the fire areas—and in particular within the Santiam Canyon—there was substantial variation." (Emphasis in PacifiCorp's brief.)

PacifiCorp also argues that the instruction "deprived PacifiCorp of its due process right to present every individual defense." PacifiCorp contends that "by instructing the jury that it could simply 'assume' that the evidence as to the individual class representatives applied to the entire class, the trial court violated PacifiCorp's due process rights, including the right to require each class member to individually prove each of its claims and PacifiCorp's right to contest liability."

Plaintiffs respond that "the trial court's instruction accurately stated the law, and worked no prejudice to PacifiCorp." In so contending, plaintiffs point out that "PacifiCorp takes issue only with one sentence" in the "Class Questions Defined" jury instruction, "which closely tracks a sentence in the California model instruction," CACI No. 115. And in plaintiffs' view, the purpose of the instruction was "simply to tell the jury that not every class member needs to appear in the witness box and tell their story in order for the class to prevail."

Further, relying on *Strawn* and *Tyson Foods, Inc. v. Bouaphakeo*, 577 US 442, 136 S Ct 1036, 194 L Ed 2d 124 (2016), plaintiffs argue that the instruction was proper

because "the whole point of class certification is that a handful of class members can litigate some or all of a claim (here, liability) on the entire class's behalf, so that everyone does not need to individually prove their claim."

Finally, plaintiffs contend, among other points, that no juror could have interpreted the instruction in the manner that PacifiCorp contends, because "the verdict form instructed the jury to give separate answers for each of the four fires" and the verdict form's "class questions" asked the jury whether "[p]laintiffs had proven their case as to 'the entire class' within the class boundaries."

C.  *The trial court erred in instructing the jury.*

Having considered the parties' arguments, we conclude that the trial court erred in instructing the jury that it could simply "assume that the evidence at the trial applies to all class members."

As an initial matter, as explained above, notwithstanding that this case was certified as a class action, plaintiffs had the burden of proving their claims as to all class members. *See Strawn*, 350 Or at 358 (noting that, to "prevail in a class action for fraud, the class plaintiff must prove reliance on the part of all class members"); *see also Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 US 393, 408, 130 S Ct 1431, 176 L Ed 2d 311 (2010) ("A class action, no less than traditional joinder (of which it is a species), merely enables a federal court to adjudicate claims of multiple parties at once, instead of in separate suits. And like traditional joinder, it leaves the parties' legal rights and duties intact and the rules of decision unchanged.").

That meant proving that PacifiCorp's tortious acts or omissions "caused" each of the class member's harm. Specifically, for the Echo Mountain Complex Fire, the 242 Fire, and the South Obenchain Fire, it meant plaintiffs had to prove that the harm to the plaintiffs within those class boundaries "would not have occurred but for" PacifiCorp's tortious conduct. And for the Santiam Canyon Fire, plaintiffs had to prove that PacifiCorp's tortious conduct "was a substantial factor in causing the harm to the plaintiffs."

The difficulty with use of the challenged jury instruction in this case is that much of the evidence introduced during the Phase I trial related to particular issues concerning particular wildfires—and for the Santiam Canyon, to particular ignitions at particular locations in the Santiam Canyon, such as Potato Hill and Kelly Lumber—and the jury could not, in our view, simply "assume" that that evidence applied "to all class members." For example, it is not apparent that the jury could "assume" that evidence of the fire at "832 North Santiam Highway," which plaintiffs emphasized to the jury in connection with the jury instruction PacifiCorp now challenges, also "applies" to, for example, a different plaintiff, whose property was destroyed miles away, in a different part of the Santiam Canyon, due to a different fire caused by a different ignition. In so observing, we emphasize that the Santiam Canyon class area is over 70 square miles, the Beachie Creek Fire undisputedly burned through the Santiam Canyon, and the jury was not required to credit plaintiffs' account of the timing of the Beachie Creek Fire burning through the Santiam Canyon.

Nor do plaintiffs explain how evidence that an individual saw an ignition on Echo Mountain, as plaintiffs' closing emphasized, and had property destroyed by the Echo Mountain Complex Fire, can be "assumed" to apply to plaintiffs over a hundred miles away whose property was destroyed by a different wildfire entirely. Nor, for example, do we see how evidence that PacifiCorp caused fires that forced firefighters to evacuate the Santiam Canyon has any application to PacifiCorp's liability to plaintiffs in, for example, the South Obenchain Fire boundary.

In reaching our conclusion that the trial court erred in instructing the jury, "You may assume that the evidence at the trial applies to all class members," we note that it is true, as we understand plaintiffs to contend, that in certain class action proceedings certain evidence can apply "classwide," to resolve certain issues. Indeed, as explained above, a fundamental aspect of class certification is a trial court's consideration of predominance; that is, the trial court making a determination of the "degree to which litigation of the controversy will require delving into individualized proof or,

conversely, the degree to which the issues lend themselves to resolution through common proof—that is, proof for one individual class member will be proof for all." *Pearson*, 358 Or at 114.

Thus, in *Strawn*, on which plaintiffs rely, the court recognized that "to prevail in a class action for fraud, the class plaintiff must prove reliance on the part of all class members," but determined that "[d]irect evidence of reliance by each of the individual class members is not always necessary." 350 Or at 358. Instead, it explained that reliance can be inferred from "circumstantial evidence" if "the same misrepresentation [was made] without material variation to the members of the class" and the "misrepresentation [was] of a nature that the class members logically would have had a common understanding of the misrepresentation, and naturally would have relied on it to the same degree and in the same way." *Id.* at 358-59.

This case is not a circumstance like that discussed in *Strawn*, where a tortious act (in *Strawn*, a misrepresentation) was uniform and without material variation. In this case, which involved multiple wildfires, because much of the evidence introduced during the Phase I trial, particularly regarding causation, related to particular issues concerning particular wildfires—and for the Santiam Canyon, to particular ignitions at particular locations in the approximately 71 square mile Santiam Canyon—it could not just be "assumed" that it applied to "to all class members."

In *Tyson Foods, Inc.*, on which plaintiffs also rely, the United States Supreme Court held that plaintiffs in a class action could prove their Fair Labor Standards Act (FLSA) claim using "representative evidence," where "each class member could have relied on that [representative evidence] to establish liability if [they] had brought an individual action" and the representative evidence "could have sustained a reasonable jury finding as to hours worked in each employee's individual action." 577 US at 455. The Court noted, however, that "[w]hether a representative sample may be used to establish classwide liability will depend on the purpose for which the sample is being introduced and on the underlying cause of action." *Id.* at 460; *see also id.* at

460 (noting that in "FLSA actions, inferring the hours an employee has worked from a study [*i.e.*, representative evidence] \* \* \* has been permitted by the Court so long as the study is otherwise admissible," but that the "fairness and utility of statistical methods in contexts other than those presented here will depend on facts and circumstances particular to those cases").

Plaintiffs' reliance on *Tyson Foods, Inc.* does not assist them because the Supreme Court cautioned that the case "provide[d] no occasion" to adopt "broad and categorical rules governing the use of representative and statistical evidence in class actions," and, in any event, it does not appear all of the evidence central to important issues in this class action proceeding could have been used by "each class member \* \* \* to establish liability if he or she had brought an individual action." *Id.* at 455, 459-60.

Put another way, although for some evidence—such as evidence of PacificCorp's purported failure to "obtain granular weather information to evaluate shutting off the power outside of limited areas designated Fire High Consequence Areas"—it may be fair to say "applies to all class members," that is not the case for much of the evidence presented at trial regarding causation. And that is in part because, as described above, the trial court certified a single class consisting of the owners of thousands of parcels of property, some of whom live over 100 miles away from one another and whose properties were affected by different wildfires that ignited under different circumstances.

Further, "when read together with the other instructions," *Sherertz*, 288 Or App at 722, we think the difficulties with the instruction that PacifiCorp challenges are compounded, not improved. As noted above, the trial court instructed the jury that there was a *single* class, which was defined in the jury instructions as all:

"(1) owners or residents, as of September 7, 2020, of any (a) privately owned real property; (b) that is wholly or partially within the boundary of the maximum extent of burn for the Echo Mountain Fire, the Kimberling Fire, the South Obenchain Fire, the 242 Fire, or the Santiam Canyon Fire; and (c) experienced fire activity during those fires; or

"(2) owners of a motorhome, residential trailer, manufactured dwelling, other mobile home, or any other personal property that as of September 7, 2020, was located on any property (a) wholly or partially within the boundary of the maximum extent of burn for the Echo Mountain Fire, the Kimberling Fire, the South Obenchain Fire, the 242 Fire, or the Santiam Canyon Fire; that (b) experienced fire activity during those fires; and (c) whose motorhome, residential trailer, manufactured dwelling, other mobile home, or any other personal property, experienced fire damage during those fires."

Given that instruction defining the single class that was certified—which appeared in the jury instructions immediately prior to the "Class Questions Defined" jury instruction PacifiCorp challenges on appeal—the jury could have understood the instruction, "You may assume that the evidence at the trial applies to all class members," to mean that evidence demonstrating that plaintiffs were harmed in one wildfire due to PacifiCorp could be "assumed" to be applicable to plaintiffs who were harmed in a different wildfire entirely; after all, the jury was instructed that every class member was a part of one, big, single class.

In seeking a different result, plaintiffs point out that the verdict form's "class questions" asked the jury whether "[p]laintiffs had proven their case as to 'the entire class' within the class boundaries" and that "the verdict form instructed the jury to give separate answers for each of the four fires." And, in the "Class Questions Defined" jury instruction, the trial court instructed the jury to interpret the "class questions" according "to these instructions *and the verdict form*." (Emphasis added.) As noted, the "Class Questions Defined" jury instruction, which contains the sentence that PacifiCorp challenges on appeal, provided, in full:

"Only some questions on the verdict form are common to all class members. Those questions are called the class questions. The class questions will be specified on the verdict form that you will use in the jury room. In answering the class questions, you must determine the answer as to the class. *Because the case is a class action, you can answer the class questions based on evidence that applies to the class as a whole*. There is no requirement that individual

class members appear in court to prove their case. *You may assume that the evidence at the trial applies to all class members. You should interpret the class questions according to these instructions and the verdict form*, understanding that for the purposes of these class questions, *the class is considered the plaintiff*. Each class question is broken down by fire."

(Emphases added.)

Ultimately, we do not think the structure of the verdict form and its "class questions" remedy the difficulties arising from the instruction that PacifiCorp challenges on appeal. That is because, as set forth above, in the "Class Questions Defined" jury instruction, the trial court told the jury that it should "answer the class questions based on evidence that applies to the class as a whole," and also that it could "assume that the evidence at the trial applies to all class members." The court also instructed the jury that there was only a single class. And, finally, the court instructed the jury that it was to "interpret the class questions according to *these instructions* and the verdict form." (Emphasis added.)

Put another way, in the "Class Questions Defined" jury instruction the jury was instructed to follow its instructions, and those instructions stated, in essence, that in answering the "class questions," all the evidence was applicable to all class members.

Thus, we do not think the instructions as a whole—including consideration of the verdict form as referenced in those instructions—"completely and accurately stated the law applicable to the case." *Id.* at 725.

Additionally, because both the trial court and plaintiffs highlighted repeatedly that the instruction that PacifiCorp challenges tracks a sentence in CACI No. 115, we note that, with regard to Oregon's uniform jury instructions, we have stated that an "instruction's inclusion as a uniform instruction lends it no special credence or presumed accuracy." *Sherertz*, 288 Or App at 725 n 2. We can discern no reason why we would lend any "special credence or presumed accuracy" to a model instruction of another state.

Moreover, the "user guide" for the Judicial Council of California Civil Jury Instructions recognizes that the instructions therein, including CACI No. 115, are not appropriate for use in every case. The "user guide" for those instructions states that the model instructions were "drafted for the common type of case and can be used as drafted in most cases," but that parties will need to adapt them when "unique or complex circumstances prevail." *Judicial Council of California Civil Jury Instructions* 2 (ed 2026), *available at* https://courts.ca.gov/system/files/file/judicial_council_of_california_civil_jury_instructions_2026.pdf (accessed Mar 24, 2026). This class action proceeding presents both unique and complex circumstances.

Thus, in sum, we conclude that the trial court erred in instructing the jury, "You may assume that the evidence at the trial applies to all class members."

D.  *The erroneous instruction was prejudicial to PacifiCorp.*

That brings us to prejudice. Considering the record as a whole and in the light of the parties' theories at trial, we conclude that the instructional error "gave rise to some likelihood that the jury reached an erroneous result." *Purdy*, 311 Or App at 259 (stating standard for prejudice due to erroneous jury instruction).

Here, not only was the instruction erroneous, but the risk of the jury misunderstanding its task based on the instruction, and relying on the instruction during its deliberations, was amplified by plaintiffs' counsel's closing argument to the jury emphasizing that, based on that instruction, the jury could "assume that the evidence that came in applies to the class members as a whole." *See Elan v. Tate*, 294 Or App 76, 86–87, 430 P3d 179 (2018) (prejudice to defendant where plaintiff's attorney "emphasized" erroneous instructions in his closing argument creating "some likelihood that the jury relied on the erroneous instructions and, consequently, reached a legally erroneous result"); *see also Purdy*, 311 Or App at 259 (considering counsel's closing argument assessing prejudice caused by erroneous jury instruction).

And the risk was further amplified by plaintiffs' counsel arguing to the jury that it could find PacifiCorp

liable for the harm in the Santiam Canyon if PacifiCorp was "a cause of the harm that night," and that PacifiCorp "admit[ted] they cause[d] harm in the Santiam Canyon" because PacifiCorp "admit[ted] they started fires in the Santiam Canyon." That is, if the jury was permitted to "assume that the evidence at the trial applies to all class members," as the trial court instructed it, it could also assume that PacifiCorp's admission to starting any particular fire in the Santiam Canyon was sufficient to determine that it caused harm to every plaintiff in the Santiam Canyon, as plaintiffs' counsel's argument suggested.

Finally, although, as articulated by plaintiffs, the verdict form's "class questions" asked the jury whether "[p]laintiffs had proven their case as to 'the entire class' within the class boundaries" and "the verdict form instructed the jury to give separate answers for each of the four fires," as explained above, the "Class Questions Defined" jury instruction instructed the jury, in essence, that in answering the "class questions," all the evidence was applicable to all class members. Thus, contrary to plaintiffs' argument, the verdict form's "class questions" did not render the erroneous jury instruction nonprejudicial.

Because we conclude that the trial court erred in instructing the jury and that the erroneous instruction was prejudicial to PacifiCorp, we reverse and remand.[9]

IV.   PACIFICORP'S OTHER ASSIGNMENTS OF ERROR

As noted at the outset, there is one assignment of error for which our disposition as to PacifiCorp's fourth assignment of error is not dispositive. That assignment of error is PacifiCorp's third assignment of error. In that

---

[9] In this opinion, we have explained how, given the class that was certified, the evidence at trial, and plaintiffs' arguments to the jury concerning causation, the instruction that is the subject of PacifiCorp's fourth assignment of error was erroneous and was prejudicial to PacifiCorp.

We observe, however, that nothing in the erroneous instruction that PacifiCorp challenges—*i.e.*, "You may assume that the evidence at the trial applies to all class members"—limited the assumption that the jury was instructed that it could make to evidence of causation. As a result, given the erroneous instruction, the jury was permitted to "assume" that evidence of PacifiCorp's tortious conduct as to one plaintiff or group of plaintiffs was "applicable" as to the class as a whole. That too, on this record, seems problematic.

assignment of error, PacifiCorp contends that the trial court "erred when it failed to grant judgment to PacifiCorp on the class claims, given the absence of evidence that a PacifiCorp-caused fire harmed every member of the class." As we understand it, PacifiCorp contends that the trial court should have granted PacifiCorp's motions for directed verdict and judgment notwithstanding the verdict, due to a lack of evidence regarding causation.

As to that assignment of error, having considered the record and the parties' arguments, viewing the evidence in the light most favorable to plaintiffs, we conclude that the trial court did not err in denying the motions that are the subject of PacifiCorp's third assignment of error. *See Johnson v. Keiper*, 308 Or App 672, 678, 481 P3d 994 (2021) ("[A] directed verdict is appropriate only in the exceptional case where reasonable people could draw only one inference and that inference is that defendant was not liable."); *Currier v. Washman, LLC*, 276 Or App 93, 97, 366 P3d 811 (2016) (noting that, "on appeal from the denial of a motion for directed verdict, we review the evidence and any resulting inferences in the light most favorable to the party that obtained a favorable verdict, and the verdict cannot be set aside unless we can affirmatively say that there is no evidence from which the jury could have found the facts necessary to support the verdict" (internal quotation marks omitted)); *see also Golik v. CBS Corp.*, 306 Or App 202, 225, 472 P3d 778 (2020) (noting, on "the rare occasion when we review the denial of a" motion for judgment notwithstanding the verdict, we "view the evidence in the light most favorable to the party who prevailed before the jury *** and examine the record to ascertain whether it contains evidence which supports the verdict" (internal quotation marks omitted)).

As for PacifiCorp's other assignments of error, our resolution of PacifiCorp's fourth assignment obviates the need to address them. In reaching that determination, we highlight that, at oral argument, PacifiCorp's counsel acknowledged that, should we reverse on PacifiCorp's fourth assignment of error, we need not reach PacifiCorp's first or second assignments of error, in which it contends, respectively, that the trial court erred in certifying the class in

this case and erred in failing to decertify the class in this case.[10]

## V.   CONCLUSION

In sum, we conclude that the trial court erred when it instructed the jury that it could "assume that the evidence at the trial applies to all class members." We also conclude that that error was prejudicial to PacifiCorp.

In reaching that conclusion, we emphasize that special jury instructions can be proper and are even perhaps necessary in class actions. But the instruction that was given in this case, which PacifiCorp challenges on appeal, was erroneous in view of the class that was certified, the evidence at trial, and plaintiffs' theories of causation. That is, the error is not in CACI No. 115 in the abstract, but in giving it in this case, because, in view of how this case developed, aspects of causation were not proven through use of common evidence.

We also emphasize that, with the benefit of knowing how the Phase I trial developed, including plaintiffs' eleventh-hour motion to amend the boundary for the Santiam Canyon Fire, the trial court has the authority on remand to reconsider its class certification decision and reconsider whether a single class is appropriate in this case. *See* ORCP 32 C(1) (class certification order "may be altered or amended before the decision on the merits").

Reversed and remanded.

---

[10] We also note that, in PacifiCorp's sixth through tenth assignments of error, it challenges various trial court rulings related to the availability of noneconomic damages. At oral argument, PacifiCorp's counsel encouraged us to address the issue of the availability of noneconomic damages even if we agreed with PacifiCorp as to its fourth assignment of error. But because we do not know how this case will develop on remand, we decline to address PacifiCorp's sixth through tenth assignments of error.